**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 22 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DON WILSON HAWKINS,

      Petitioner-Appellant,

v.

MIKE MULLIN, [*] Warden, Oklahoma
State Penitentiary,

      Respondent-Appellee.

No. 00-6204

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-98-460-C)**

---

Scott W. Braden, Assistant Federal Public Defender, Death Penalty Federal
Habeas Corpus Division, Oklahoma City, Oklahoma, for Petitioner-Appellant.

Jennifer B. Miller, Assistant Attorney General, State of Oklahoma (W.A. Drew
Edmondson, Attorney General of Oklahoma, with her on the brief), Oklahoma
City, Oklahoma, for Respondent-Appellee.

---

Before **TACHA**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.

---

**TACHA**, Chief Judge.

---

[*]    Mike Mullin replaced Gary Gibson as Warden of the Oklahoma State
Penitentiary effective March 25, 2002.

Petitioner-appellant Don Wilson Hawkins appeals the denial of habeas relief, *see* 28 U.S.C. § 2254, from his Oklahoma first-degree felony murder conviction and death sentence. Among other claims, Hawkins argues that the State improperly based his first-degree felony murder conviction on kidnapping for extortion, which is not a specifically enumerated felony supporting a first-degree murder conviction under Oklahoma law. The Oklahoma Court of Criminal Appeals, nevertheless, interpreted Oklahoma's first-degree felony murder statute to include kidnapping for extortion as an underlying felony. We hold that the Oklahoma appellate court's interpretation was not unforeseeable and therefore did not deprive Hawkins of due process. We therefore affirm the district court's denial of habeas relief on this claim, as well as on Hawkins's other claims.

## I.    FACTS

On August 19, 1985, Hawkins, armed with a revolver, forced his way into Linda Thompson's car, as she purchased stamps at a self-service postal station at a shopping mall near her home. Thompson's two small daughters, Lori, age four, and Katie, eighteen months old, were also in the car at the time. According to Hawkins, his original plan was to kidnap Thompson and hold her for ransom. Hawkins drove the victims to the home of Shirley Pitts, with whom Hawkins had

been living for several months. Pitts's fifteen-year-old nephew, Chris Lovell, and Hawkins's cousin, Dale Shelton, were staying with the couple at that time.

At the house, Pitts and Lovell watched the children. Hawkins and Shelton kept Thompson upstairs in the house for several hours. Later that night, they took Thompson to a barn several hundred yards away, where they kept her chained in the barn's loft. Her children remained locked in a bedroom in the house.

Shelton and Lovell each raped Thompson. During the night, they did allow Thompson to see her children at the house. In the morning, after permitting Thompson briefly to say goodbye to her daughters, Hawkins and Shelton drove Linda Thompson to a nearby lake, where Hawkins hog-tied and drowned her, while Shelton stood lookout. Hawkins and Shelton hid the body and fled the state. Pitts and Lovell left Thompson's daughters with their babysitter.

Police arrested Pitts and Lovell later that day. California police arrested Hawkins and Shelton two months later, in Sacramento. Following his arrest, Hawkins made a statement to Oklahoma detectives admitting these crimes, including drowning Thompson because she otherwise could be a witness against him.

The jury convicted Hawkins of the first-degree felony murder of Linda Thompson and two counts of kidnapping her children for extortion. The jury sentenced him to life imprisonment on the two kidnapping-for-extortion

-3-

convictions, which Hawkins had committed after two or more prior felony convictions.

During the capital sentencing proceeding, the State incorporated its first-stage evidence and presented additional evidence concerning Hawkins's further violent criminal conduct. That evidence established that, after Thompson's murder, Hawkins had kidnapped, raped, and sodomized two teenage girls in San Diego, California. The following day, he had kidnapped and robbed two other women, one of whom his accomplice had raped and sodomized. In addition, immediately prior to Thompson's murder, Hawkins had killed a man in Denver, Colorado. Hawkins had also beaten his girlfriend Pitts and kept her locked in a trailer while the couple briefly lived in Colorado. Finally, Hawkins had lost his job in Colorado after he shot at his boss's car.

Hawkins instructed his defense attorney, during the trial's second stage, not to raise any objections or cross-examine any State witnesses. Hawkins also directed his attorney not to put on any evidence in mitigation or present any opening or closing argument.

Jurors found all four of the charged aggravating factors: 1) Hawkins had killed Thompson to avoid arrest; 2) Thompson's murder was especially heinous, atrocious, or cruel; 3) Hawkins is a continuing threat to society; and 4) Hawkins had previously been convicted of a violent felony. The jury then sentenced

Hawkins to death. The Oklahoma Court of Criminal Appeals affirmed Hawkins's convictions and sentences on direct appeal, *see Hawkins v. State*, 891 P.2d 586 (Okla. Crim. App. 1994), *cert. denied*, 516 U.S. 977 (1995), and denied post-conviction relief in an unpublished opinion.

The State also tried Shelton jointly with Hawkins. The jury convicted Shelton of first-degree felony murder, first-degree rape and forcible oral sodomy, all involving Linda Thompson, and of kidnapping Thompson's two children for extortion. Jurors sentenced Shelton to five consecutive life sentences. *See Shelton v. State*, 793 P.2d 866, 869 (Okla. Crim. App. 1990).

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Hawkins will be entitled to habeas relief only if he can establish that the state courts' resolution of his claims was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We will presume correct any state-court factual finding, absent clear and convincing evidence to the contrary. *See id.* § 2254(e)(1). If the state courts did not address Hawkins's habeas claims' merit, however, we will review the district court's decision *de*

*novo*, and any factual findings only for clear error. *See, e.g., Romano v. Gibson*, 278 F.3d 1145, 1150 (10th Cir. 2002).

### III. ISSUES

**A.** ***Basing first-degree felony murder conviction on kidnapping for extortion.*** At the time this crime occurred, in October 1985, Oklahoma defined first-degree felony murder as "tak[ing] the life of a human being, regardless of malice, in the commission of forcible rape, robbery with a dangerous weapon, kidnapping, escape from lawful custody, first degree burglary or first degree arson." Okla. Stat. tit. 21, § 701.7(B) (1983) (subsequently amended). Hawkins challenges his first-degree felony murder conviction because the State charged him with, and the jury convicted him of, first-degree felony murder based upon kidnapping for extortion, *see id.* § 745, a separate offense from simple kidnapping, *see id.* § 741, under Oklahoma law. Nonetheless, in rejecting this claim, the Oklahoma Court of Criminal Appeals held that the Oklahoma legislature, by referring to "kidnapping" in the first-degree felony murder statute, intended to include all forms of kidnapping made criminal under Oklahoma law. *See* Opinion, No. PC 96-1271, at 6-7 (Okla. Crim. App. Mar. 18, 1998).

Although Hawkins challenges the state court's interpretation of Oklahoma's first-degree felony murder statute, this court is bound by the state court's

-6-

interpretation of its own law. *See, e.g., Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *see also, e.g., Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964) (finding appellants' argument that a state statute's language did not criminalize their conduct was "persuasive but beside the point," because state courts had construed the statute to apply in those circumstances); *McDonald v. Champion*, 962 F.2d 1455, 1462 (10th Cir. 1992) (noting it was not habeas court's task to determine whether state court's decision interpreting state statute was "correct"). Nonetheless, a state court's retroactive application of an unforeseeable interpretation of state law may deprive a criminal defendant of due process. *See Devine v. N.M. Dep't of Corr.*, 866 F.2d 339, 345-47 (10th Cir. 1989) (noting that a state "court is of course free to apply its rules of statutory interpretation without federal review. The court may not, however, make its interpretations retroactive when they are unforeseeable."). The focus of our habeas inquiry, therefore, is whether it was foreseeable that the state court would interpret Okla. Stat. tit. 21, § 701.7(B) to include kidnapping for extortion as a felony that will support a first-degree felony murder conviction

    ***1.   Exhaustion/procedural default.*** The State first argues to this court that Hawkins failed to exhaust this claim in state court and that, were he to raise it now, the state courts would deem it procedurally barred. Hawkins did fail to object when the trial court instructed on, and the jury then convicted Hawkins

-7-

of, first-degree felony murder based upon kidnapping for extortion. Nor did he raise this issue on direct appeal. After his direct appeal, however, the Oklahoma Court of Criminal Appeals stated in dicta in *Richie v. State*, 908 P.2d 268, 275 (Okla. Crim. App. 1995), that "[k]idnapping and kidnapping for extortion are separate and distinct crimes" under Oklahoma law and "[k]idnapping for extortion is not one of the enumerated felonies for a [first-degree] felony murder conviction." In *Richie*, the state appellate court held that the trial court had erred in instructing the jury on kidnapping for extortion as the felony underlying the first-degree felony murder charge, when the State had instead charged him with felony murder during a kidnapping. *See id.* at 274-75.

Following *Richie*, Hawkins applied for state post-conviction relief, challenging the trial court's jurisdiction to sentence him to death because the felony underlying his first-degree felony murder conviction, kidnapping for extortion, was not one of the felonies enumerated in § 701.7(B). The state appellate court addressed the merits of that claim in order to avoid any miscarriage of justice. *See* Opinion, No. PC 96-1271, at 4, 5-7. In denying relief, the state appellate court held that the Oklahoma legislature had intended § 701.7(B)'s reference to "kidnapping" to include kidnapping for extortion as a felony that would support a first-degree felony murder conviction. *See id.* at 6-7.

In so holding, the Oklahoma Court of Criminal Appeals rejected *Richie*'s dicta to the contrary. *See id.* at 7.

Where, as here, "a state court [actually] decides an issue on the merits, state procedural bars will not preclude federal habeas review." *Hooks v. Ward*, 184 F.3d 1206, 1215 (10th Cir. 1999) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 801-03 (1991)); *see also Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998) (pre-AEDPA). Nonetheless, the State argues that Hawkins failed to exhaust this specific federal habeas claim because he never asserted any federal basis for relief in state court. *Cf. Anderson v. Harless*, 459 U.S. 4, 6-8 (1982) (per curiam) (holding, in pre-AEDPA case, that petitioner failed to present federal habeas claim fairly to state courts where, in state court proceedings, he relied only upon state law to challenge jury instruction). We disagree. In his state-court pleadings addressing this claim, Hawkins referred to both due process and the Eighth Amendment's freedom from cruel and unusual punishment. *See* Application for post-conviction relief, No. PC-96-1271, at 3, 5; Reply Br. at 7-8. That is sufficient to exhaust his federal habeas claim in this case. *See Nichols v. Sullivan*, 867 F.2d 1250, 1252-53 (10th Cir. 1989) (holding, in pre-AEDPA case, that docketing statement's reference to Fifth Amendment was sufficient to put state court on notice that petitioner was asserting federal basis for claim).

-9-

The State also argues that, in any event, Hawkins has never asserted the crux of his current federal claim challenging the foreseeability of the state court's interpretation of Oklahoma's first-degree felony murder statute. Hawkins, however, did present the "essential substance" of this claim to the state court in his state post-conviction application. *Engberg v. Wyoming*, 265 F.3d 1109, 1116 (10th Cir. 2001), *cert. denied,* 122 S. Ct. 1570 (2002). Thus, he did provide the state courts with the initial opportunity to address this issue. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 844-45 (1999) (pre-AEDPA). Because "[s]ection 2254 does not . . . require repetitive presentment of a claim to the state courts," *Bear v. Boone*, 173 F.3d 782, 784 (10th Cir. 1999) (citing *Humphrey v. Cady*, 405 U.S. 504, 516 n.18 (1972)), we deem Hawkins to have exhausted this federal habeas claim. [1] We therefore turn to the claim's merit. Because the state appellate court did not specifically address the foreseeability of its decision, our review is *de novo* . *See Romano* , 278 F.3d at 1150.

---

[1]     Even if we decided that Hawkins had failed to exhaust his specific federal habeas claim challenging the foreseeability of the Oklahoma Court of Criminal Appeals' decision denying him post-conviction relief, this court, under AEDPA, would remain free to *deny* relief on such an unexhausted claim. *See* 28 U.S.C. § 2254(b)(2); *see also, e.g., Gonzales v. McKune* , 279 F.3d 922, 926 (10th Cir. 2002).

**2.    *Merits.*** Hawkins asserts that the state appellate court's decision to deny him state post-conviction relief unforeseeably extends Oklahoma's first-degree felony murder statute to include kidnapping for extortion, depriving him of due process. [2] *See, e.g., Rogers*, 532 U.S. at 460-62; *Bouie*, 378 U.S. at 350, 354-55, 362. *See generally McDonald*, 962 F.2d at 1458 n.2 (noting "Oklahoma courts are of course free to apply their [statutory] interpretation in future cases, regardless of how unexpected it may have been.").

"[A] criminal statute must give fair warning . . . ." *Bouie*, 378 U.S. at 350. "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, [then the construction] must not be given retroactive effect." *Id.* at 354 (further quotation omitted). "The test for determining whether the retroactive application of a judicial decision violates due process is essentially one of foreseeability." *Johnson v. Kindt*, 158 F.3d 1060, 1063 (10th Cir. 1998).

*McDonald v. Champion*, 962 F.2d 1455, guides this court's analysis of this issue. [3] *McDonald* involved a habeas proceeding and a markedly similar claim.

---

[2] The parties refer to this argument, at times, as an *ex post facto* claim. Nonetheless, as the parties acknowledge, the argument implicates due process concerns instead, because Hawkins challenges the state appellate court's decision rather than a legislative act. *See, e.g., Rogers v. Tennessee*, 532 U.S. 451, 453, 456 (2001); *see also id.* at 456-62.

[3] *McDonald* relies upon *Bouie*, 378 U.S. 347. *See, e.g., McDonald*, 962 F.2d

(continued...)

There, this court considered the Oklahoma Court of Criminal Appeals'

interpretation of the same first-degree felony murder statute, which specifically

includes robbery with a dangerous weapon, to also include the unenumerated

felony of attempted robbery with a dangerous weapon. *See McDonald*, 962 F.2d

at 1456-57. We held that the Oklahoma appellate court's interpretation was not

unforeseeable. *See id.* at 1456.

In making this foreseeability determination, this court in *McDonald* made

two inquiries. First, we considered whether Oklahoma's first-degree felony

murder statute, Okla. Stat. tit. 21, § 701.7(B), was "narrow and precise" on its

face. *McDonald,* 962 F.2d at 1458-59; *see also Bouie*, 378 U.S. at 352. If so,

then "any judicial expansion of that statute beyond its own terms will be

considered unforeseeable," because "'[w]hen a statute on its face is narrow and

precise . . . it lulls the potential defendant into a false sense of security, giving

him *no reason even to suspect* that conduct *clearly* outside the scope of the statute

---

[3](...continued)
at 1458. The Supreme Court has since limited *Bouie*, but only to the extent its
dicta can be read to "incorporate[] the specific prohibitions of the *Ex Post Facto*
Clause" into the applicable due process analysis. *Rogers*, 532 U.S. at 458-59.
*Bouie*'s "rationale[, however,] rested on core due process concepts of notice,
foreseeability, and, in particular, the right to fair warning as those concepts bear
on the constitutionality of attaching criminal penalties to what previously had
been innocent conduct." *Rogers*, 532 U.S. at 459. Because *Rogers* continues to
apply the due process concerns of notice and foreseeability, as did *Bouie*, *see,
e.g., Rogers*, 532 U.S. at 459, 461-62, this court's *McDonald* decision continues
to guide this court's analysis in this case.

as written will be retroactively brought within it by an act of judicial construction.'" *McDonald*, 962 F.2d at 1458, 1459 (quoting *Bouie*, 378 U.S. at 352; emphasis added in *McDonald*; further quotation omitted). Nonetheless, this court determined, in *McDonald*, that "Oklahoma's first-degree felony murder statute is not 'narrow and precise' in th[is] sense." *Id.* at 1459. This was so even though "a technical and rational argument can be made" supporting a contrary interpretation of the statute. *Id.* As in *McDonald*, Hawkins cannot assert that he had "no reason even to suspect" that if he killed someone during the course of a kidnapping for extortion, he would not be punished for first-degree felony murder. *See id.*

In fact, under Oklahoma law, most kidnappings for extortion, *see* Okla. Stat. tit. 21, § 745, could also be charged simply as kidnapping, under § 741. Oklahoma law defines kidnapping, as relevant here, to apply to "[e]very person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, with intent . . . [t]o cause such other person to be secretly confined or imprisoned . . . against his will." *Id.* § 741 (1983). Kidnapping for extortion, on the other hand, applies, in relevant part, to "[e]very person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, for the purpose of extorting any money, property or thing of value or advantage from the person . . . kidnapped, or from any other

-13-

person . . . ." *Id.* § 745(A) (1983). While kidnapping for extortion, therefore, does require a different intent than kidnapping, these two offenses are otherwise quite similar. *See Ogelsby v. State*, 411 P.2d 974, 976-77 (Okla. Crim. App. 1966) (holding kidnapping was not lesser included offense of kidnapping for extortion because kidnapping requires proof of an independent specific intent).

Therefore, we cannot say the Oklahoma Court of Criminal Appeals, in denying Hawkins post-conviction relief, has applied its first-degree felony murder statute "to conduct 'clearly' outside of its reach. . . . [W]e cannot say that the language failed to put [Hawkins] on notice of the potential consequences of his actions." *McDonald*, 962 F.2d at 1459.

Nonetheless, "[t]his does not end our inquiry . . . . A judicial expansion of a statute may be unforeseeable even though the statutory language is not 'narrow and precise.'" *Id. McDonald*'s second inquiry, therefore, is "whether the [state court's] construction is so unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue as to prevent its application retroactively." *Id.* at 1458 (further quotations omitted); *see also, e.g., Rogers*, 532 U.S. at 461; *Bouie*, 378 U.S. at 354. "Here, . . . Oklahoma's construction of its first-degree felony murder statute is not so 'unexpected and indefensible' as to make its application violative of due process." *McDonald*, 962 F.2d at 1460.

Our analysis focuses on the law at the time Hawkins committed these crimes. *See, e.g., Rogers*, 532 U.S. at 464; *Bouie*, 378 U.S. at 354; *see also McDonald*, 962 F.2d at 1459 n.3; *Devine*, 866 F.2d at 345. Because the Oklahoma Court of Criminal Appeals did not decide *Richie* until well after Hawkins committed the crimes at issue here, therefore, that decision does not factor into our analysis. Rather, at the time Hawkins committed these offenses, there was no Oklahoma authority specifically addressing this issue. [4] *Cf. United States v. Capps*, 77 F.3d 350, 354 (10th Cir. 1996) (noting, in federal direct criminal appeal, that where Tenth Circuit had never interpreted federal criminal statute, Supreme Court's interpretation could not have judicially enlarged that statute).

Prior to 1973, any felony in Oklahoma would have supported a capital first-degree felony murder conviction. *See McDonald*, 962 F.2d at 1460. Then, in 1973, Oklahoma enacted a new first-degree murder statute that enumerated five felonies that would support a capital murder conviction, specifically including kidnapping for extortion. *See id.* at 1460. That statute, however, "was not a felony-murder provision, in at least the traditional sense, because it required a

---

[4] Hawkins relies, in part, on *Ogelsby*, 411 P.2d at 976, which does predate his crimes at issue here. In *Ogelsby*, the Oklahoma appellate court held that kidnapping under Okla. Stat. tit. 21, § 741, was a separate offense from kidnapping for extortion, *id.* § 745. Nonetheless, *Oglesby* does not address the specific issue presented here.

showing of premeditation." *Id.* at 1461 (addressing Okla. Stat, tit. 21, § 707.1(2) (1973)). The 1973 statute was intended instead to list aggravating circumstances that would justify imposing a death sentence. *See id.* Three years later, however, the Oklahoma legislature again revised its capital sentencing legislation, this time enumerating six felonies that would support a first-degree felony murder conviction, under traditional felony murder principles. *See id.* at 1457, 1461. This new legislation specifically included kidnapping, but omitted kidnapping for extortion. The State tried Hawkins under this 1976 legislation.

Kidnapping for extortion, therefore, would clearly have supported a capital felony murder conviction from 1910 through 1976. *See id.* at 1460-61. Hawkins argues, however, that the 1976 statute's omission of kidnapping for extortion establishes that the Oklahoma legislature intended that this crime would no longer support a first-degree felony murder conviction. As we noted in *McDonald*, however, "[w]hile persuasive, this argument does not render the Oklahoma court's [opposite] interpretation 'indefensible.'" *Id.* at 1461. The 1976 statute also omitted a specific, previous reference to attempts to commit the enumerated felonies. *See id.* at 1460-61. Yet, the Oklahoma Court of Criminal Appeals interpreted the 1976 legislation, nevertheless, still to include attempts. *See James v. State*, 637 P.2d 862, 865 (Okla. Crim. App. 1981), *overruling on other grounds recognized*, *Staggs v. State*, 804 P.2d 456 (Okla. Crim. App. 1991). This court

-16-

held this interpretation to have been foreseeable. *See McDonald*, 962 F.2d at 1461-62.

Furthermore, interpreting the 1976 statute to eliminate kidnapping by extortion as a felony that could support a first-degree felony murder conviction reaches an irrational result. *See id.* at 1460 (considering rationality of state court's statutory interpretation when determining that interpretation's foreseeability). Oklahoma punishes simple kidnapping with no *more* than ten years' imprisonment. *See* Okla. Stat. tit. 21, § 741. Kidnapping for extortion, on the other hand, apparently the more serious offense under Oklahoma law, is punishable by imprisonment for no *less* than ten years. *See id.* § 745(A). Yet, interpreting the first-degree felony murder statute to include only kidnapping under § 741, and not kidnapping for extortion under § 745, reaches the irrational result that the lesser kidnapping offense could support a capital murder conviction, while the greater offense, kidnapping for extortion, could not.

Moreover, including kidnapping for extortion in § 701.7(B)'s reference to kidnapping is in keeping with the Oklahoma legislature's

> policy that one who, by his wilfull criminal conduct, sets in motion a chain of events so perilous to the sanctity of life that death results therefrom[] must bear the ultimate responsibility for his actions. . . . . Proscribing such actions under [Oklahoma's] first-degree murder statutes performs the rational function of deterring the commission of felonies so inherently dangerous as to create foreseeable risks of death.

-17-

*Hatch v. State*, 662 P.2d 1377, 1384 (Okla. Crim. App. 1983); *see also* *McDonald*, 962 F.2d at 1460 & 1461 n.8; *cf. Brown v. State*, 743 P.2d 133, 138 (Okla. Crim. App. 1987) (noting that Oklahoma legislature, in making death occurring during escape first-degree felony murder, was seeking "to deter escapes from lawful custody because of the inherent danger to law enforcement officers in such situations. . . . The risk of lethal violence is the same, regardless of whether the escape constitutes a felony or a misdemeanor."). Kidnapping, then, whether or not for purposes of extortion, presents the same inherent danger the Oklahoma legislature seeks to deter through its first-degree felony murder statute. *See* *James*, 637 P.2d at 865.

Finally, although at the time Hawkins committed these crimes, Oklahoma law had not addressed the specific question presented here, Oklahoma courts had already declined to restrict § 701.7(B)'s application strictly to only those crimes expressly mentioned there. Again, in *James*, 637 P.2d at 864-65, the Oklahoma appellate court held that, although § 701.7(B)'s language did not specifically include attempts to commit the enumerated crimes, as prior versions of that statute had, the Oklahoma legislature intended that those attempts would continue to support a first-degree felony murder conviction. *But see James*, 637 P.2d at 865 (noting, however, that Oklahoma's statute defining robbery with firearms is itself "unique in its inclusion of the attempt to commit robbery with firearms").

-18-

For these reasons, we cannot conclude that the Oklahoma appellate court's interpreting its first-degree felony murder statute to include kidnapping for extortion was "so 'unexpected and indefensible'" as to deprive Hawkins of due process. *McDonald*, 962 F.2d at 1460.

**B. Ineffective trial representation.** In his second claim, Hawkins contends that his trial attorney was ineffective during the capital sentencing proceeding because the attorney failed to investigate and present mitigating evidence. *See* Appellant's opening br. at 25; *see also* Dist. Ct. R. doc. 14 at 22-23 (§ 2254 petition). Hawkins further asserts that he, himself, could not knowingly and voluntarily waive presenting mitigating evidence because his defense attorney failed to explain mitigating evidence adequately to him. *See* Appellant's opening br. at 25-26; *see also* Dist. Ct. R. at 28 (§ 2254 petition). The State argues, however, that Hawkins never presented these specific ineffective-assistance arguments to any state court and that this habeas claim thus remains unexhausted. *See* 28 U.S.C. § 2254(b)(1)(A).

In order to exhaust his state remedies, a federal habeas petitioner must have first fairly presented the substance of his federal habeas claim to state courts. *See, e.g., O'Sullivan*, 526 U.S. at 844-45 (pre-AEDPA). Although the federal district court here, "out of an overabundance of caution," Dist. Ct. R. doc. 24 at 17, addressed this claim's merit, we decline to do so because it remains

unexhausted and Oklahoma courts would now deem it procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.* (1991). *See generally Medlock v. Ward*, 200 F.3d 1314, 1322 (10th Cir. 2000) (denying habeas relief on procedural-default basis, despite district court's decision addressing claim's merit).

During his capital sentencing proceeding, Hawkins instructed his defense attorney not to present any mitigating evidence or argument, and not to cross-examine the State's witnesses or raise any objections. On direct appeal, then, Hawkins alleged that he had been "denied the effective assistance of counsel when the trial judge, over defense counsel's objection, allowed [Hawkins] to commit state sanctioned suicide." Appellant's direct-appeal br. at 22. Hawkins further argued to the state appellate court:

> The issue before this Court is: Who controls the case--the lawyer of the misguided client? In other words, this Court must decide if a defendant is entitled [to] a fair trial even when he says he does not want one. In this case, despite trial counsel's desire to put on closing argument during the penalty phase, the trial judge acquiesced to Appellant's desire to prevent presentation of such an argument. Also, the record reveals defense counsel was precluded from putting on mitigation evidence because of Appellant's suicidal decision not to contest the State's case. Trial counsel's strategic decisions are binding and the trial court denied Appellant the effective assistance of counsel by not allowing his lawyer to do his job. Specifically, in this case, the trial judge kept defense counsel from giving a closing argument and presenting evidence in mitigation of the death penalty.

*Id.*

Additionally, Hawkins argued on direct appeal that, even if a capital defendant could waive closing argument and the opportunity to present mitigating evidence, the trial court here failed to make an adequate record to insure that Hawkins did knowingly and voluntarily make such a waiver. *See id.* at 40. In part, Hawkins complained that the trial court failed to inform him of the consequences of waiving his opportunity to present mitigating evidence and closing argument. *See id.* at 42-44, 47.

In his state post-conviction relief application, on the other hand, the only challenge to his trial representation that Hawkins asserted was that defense counsel was ineffective for failing to challenge the trial court's jurisdiction, because the first-degree felony murder charge was based upon kidnapping for extortion, rather than kidnapping. *See* State post-conviction relief app. at 5.

It was not until his federal habeas petition, then, that Hawkins first argued instead that his defense attorney was ineffective for failing to investigate possible mitigating evidence. *See* § 2254 pet. at 22-24, 29. Hawkins also argued for the first time that he could not knowingly and voluntarily waive presenting mitigating evidence because his defense attorney failed to explain mitigating evidence to him adequately. *See id.* at 28.

While Hawkins's state-court claims focused on the trial court's actions, then, Hawkins asserts different arguments in these federal habeas proceedings, in

which he specifically challenges only defense counsel's failings. Thus, Hawkins has never fairly presented the substance of his federal habeas claim to any state court. *See, e.g., O'Sullivan*, 526 U.S. at 844-45; *see also, e.g., Picard v. Connor*, 404 U.S. 270, 276-77 (1971) (holding, in pre-AEDPA case, habeas petitioner failed fairly to present federal claim to state court where, despite presenting all necessary facts, petitioner failed to assert specific argument that he later tried to raise in federal court); *Thomas v. Gibson*, 218 F.3d 1213, 1221 n.6 (10th Cir. 2000) (holding petitioner's general state-court ineffective-assistance claim was insufficient to exhaust his later, more specific federal habeas claim); *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999) (holding petitioner had failed to exhaust state remedies where basis of petitioner's state-court ineffective-assistance claim was different than that of his federal ineffective-assistance claim). The fact that Hawkins asserted some ineffective-assistance claims in state court, therefore, will not suffice to exhaust this significantly different federal habeas claim challenging counsel's failure to conduct an adequate investigation or to advise Hawkins properly. *See Thomas*, 218 F.3d at 1220-21 & 1221 n.6; *Brown v. Shanks*, 185 F.3d 1122, 1124-25 (10th Cir. 1999).

Moreover, in addition to providing state courts the initial opportunity to address a criminal defendant's federal claims, *see, e.g., Williams v. Taylor*, 529 U.S. 420, 437 (2000), the exhaustion requirement also insures that a federal

habeas claim will be accompanied by a complete factual record. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (pre-AEDPA). Here, however, because Hawkins has now shifted the basis of his ineffective-assistance argument from the trial court's actions to that of his defense attorney, Hawkins never sought to develop, in any state-court proceeding, the factual basis necessary to resolve his current claim. Specifically, Hawkins never sought in state court to develop evidence addressing what efforts his attorney undertook to investigate available mitigating evidence, whether defense counsel then made a strategic decision to refrain from presenting this evidence, or what advice and information defense counsel gave Hawkins before Hawkins decided he did not want counsel to defend against a capital sentence. Accordingly, Hawkins failed to develop diligently in state court any factual basis upon which this court could resolve this federal habeas claim. While a habeas petitioner might still be able to present to a federal habeas court "bits of evidence" not previously presented in state court, he cannot first present evidence in a federal habeas proceeding that "places the claims in a significantly different legal posture" without first presenting that evidence in state court. *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997) (further quotation omitted) (pre-AEDPA); *see also Vasquez v. Hillery*, 474 U.S. 254, 260 (1986) (pre-AEDPA).

Thus, under AEDPA, because Hawkins failed to develop diligently the factual basis of his current habeas claim, § 2254(e)(2) will permit "a federal evidentiary hearing only in very limited circumstances where, among other requirements, the claim relies on 'a new rule of constitutional law . . .' or 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Romano*, 278 F.3d at 1150 (quoting 28 U.S.C. § 2254(e)(2)(A)); *see also Williams*, 529 U.S. at 429-30, 432-34, 437. Although Hawkins contends the district court erred in denying him a federal evidentiary hearing on this claim, he fails to assert how this claim would fit into either § 2254(e)(2)(A) exception. *See* Appellant's opening br. at 30. Consequently, even if Hawkins had exhausted this ineffective-assistance claim in state court, he would still not be entitled to a federal evidentiary hearing to develop its factual basis. *See, e.g., Romano*, 278 F.3d at 1150; *Valdez v. Ward*, 219 F.3d 1222, 1230 (10th Cir. 2000), *cert. denied*, 532 U.S. 979 (2001). *See generally Medlock*, 200 F.3d at 1323 (noting similarly that, even if petitioner had not procedurally defaulted habeas claim, § 2254(e)(2) would still preclude federal evidentiary hearing).

Thus, because Hawkins failed to raise this claim in state court, it remains unexhausted and Oklahoma courts would now deem it procedurally barred. *See Coleman*, 501 U.S. at 735 n.*. *See generally Thomas*, 218 F.3d at 1221 (noting

-24-

that "Oklahoma's procedural bar to claims not raised on initial post-conviction review, including claims of ineffective assistance of counsel, is independent and adequate" to preclude habeas review). Hawkins fails to assert either cause and prejudice excusing this default, or that this court must review this claim's merit to prevent a fundamental miscarriage of justice. *See, e.g., Coleman*, 501 U.S. at 750. We therefore decline to address the merits of this ineffective-assistance claim.

**C.** **Failure to appoint investigator.** Prior to trial, Hawkins asked the trial court to appoint an investigator to go to California to investigate the circumstances surrounding Hawkins's custodial statements made to Oklahoma detectives while Hawkins was in custody in Sacramento. *See* O.R. at 105. The trial court, however, denied this request, asserting that it did not know of any statutory basis for the court to do so and noting that *Ake v. Oklahoma*, 470 U.S. 68 (1985), did not require appointing any experts other than a psychiatrist. *See* Tr. (June 3, 1986, hr'g) at 14-16. Hawkins claims that the trial court's denial of his request for an investigator deprived him of due process and a fair trial.[5]

---

[5] Hawkins also asserts that the trial court's denying him an investigator deprived him of the effective representation guaranteed by the Sixth Amendment. *See* Appellant's opening br. at 30, 35-36. Hawkins, however, never asserted this specific ineffective-assistance claim to any state court and it thus remains unexhausted. Further, the state courts would now deem it procedurally barred. *See Coleman*, 501 U.S. at 735 n.*. *See generally Thomas*, 218 F.3d at 1221

(continued...)

"A state must provide an indigent defendant with the basic tools to present an adequate defense or appeal." *Rojem v. Gibson*, 245 F.3d 1130, 1139 (10th Cir. 2001) (citing *Ake*, 470 U.S. at 77). [6] "An indigent defendant requesting

---

[5](...continued)
(noting that "Oklahoma's procedural bar to claims not raised on initial post-conviction review, including claims of ineffective assistance of counsel, is independent and adequate" to preclude habeas review). Hawkins does not now assert any cause excusing this default, nor that this court's failure to address this claim would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Hawkins's procedural default of this Sixth Amendment claim, therefore, precludes federal habeas review. *See id.*

[6] The State argued to the district court that *Ake* is limited to requiring the State to provide psychiatric assistance to an indigent defendant when it is necessary to prepare his defense. Although this court has extended *Ake* to the State's provision of investigators and other experts as well, *see, e.g., Castro v. Ward*, 138 F.3d 810, 826 (10th Cir. 1998); *see also, e.g., Rojem*, 245 F.3d at 1139, the Supreme Court has not specifically done so. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985) (noting that, because habeas petitioner had failed to allege more than "undeveloped assertions" that trial court's appointment of defense investigator and forensic experts would have been beneficial, Court could not conclude that trial court's denying defendant these experts resulted in due process violation; declining, therefore, "to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of th[is] type"). *But see Medina v. California*, 505 U.S. 437, 444-45 (1992) (noting that *Ake* expanded earlier Supreme Court due process cases holding that an indigent criminal defendant is entitled to minimum assistance necessary to assure fair opportunity to present his defense). There may, therefore, be an unresolved question as to whether, under AEDPA, *Ake* would be the "clearly established" Supreme Court precedent applicable here. *See* 28 U.S.C. § 2254(d)(1); *cf. Rogers v. Gibson*, 173 F.3d 1278, 1285 n.5 (10th Cir. 1999) (noting that it is unclear whether Tenth Circuit's extending *Ake* to apply in cases where State did not offer psychiatric evidence is appropriate standard to apply under AEDPA). We need not address that issue here, however, because, even applying this court's expanded view of *Ake*, Hawkins is not entitled to habeas relief.

appointment of an investigator," however, "bears the burden of demonstrating with particularity that such services are necessary to an adequate defense." *Castro*, 138 F.3d at 826 (further quotations omitted). To warrant habeas relief, then, Hawkins must now show that "the trial court's refusal to appoint an . . . investigator caused substantial prejudice to his defense." *Matthews v. Price*, 83 F.3d 328, 335 (10th Cir. 1996).

> We consider three factors to determine what tools of defense are required:
>
>> (1) the effect on [the defendant's] private interest in the accuracy of the trial if the requested service is not provided; (2) the burden on the government's interest if the service is provided; and (3) the probable value of the additional service and the risk of error in the proceeding if such assistance is not offered.

*Rojem*, 245 F.3d at 1139 (further quotation omitted).

> The first and second prongs of this test are easily satisfied because as the Supreme Court has held, "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling," and although the State's interest in financial economy may weigh against the provision of experts to indigent defendants, its "interest in prevailing at trial–unlike that of a private litigant–is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases."

*Johnson v. Gibson*, 169 F.3d 1239, 1246 (10th Cir. 1999) (quoting *Ake*, 470 U.S. at 78-79). "The third factor[, therefore,] is the critical factor." *Rojem*, 245 F.3d at 1139; *see also Johnson*, 169 F.3d at 1246-47.

On direct appeal, the Oklahoma Court of Criminal Appeals held that Hawkins had failed to establish any resulting prejudice from his not having an investigator and that the trial court, therefore, had properly denied Hawkins an investigator. *See Hawkins*, 891 P.2d at 593. Focusing on that critical third factor, we conclude the state appellate court's determination was reasonable. *See Rojem*, 245 F.3d at 1139 (reviewing, for reasonableness under 28 U.S.C. § 2254(d)(1), state court's decision affirming trial court's denial of defense request for an investigator).

Evidence presented at an *in camera Jackson v. Denno* [7] hearing during Hawkins's trial indicated: Sacramento police arrested Hawkins October 7, 1985. Oklahoma detectives went to Sacramento, where, on October 8, they videotaped a ninety-minute interview with Hawkins. During the interview, detectives advised Hawkins of his *Miranda* [8] rights, after which he made numerous incriminating admissions. Three days later, on October 11, San Diego detectives transported Hawkins, along with Shelton, from Sacramento to San Diego. During that ten- to twelve-hour trip, and after having been advised of their *Miranda* rights, the pair made further incriminating statements concerning the Oklahoma abductions and murder.

---

[7]     378 U.S. 368 (1964).

[8]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

Hawkins testified during the *Jackson v. Denno* hearing, however, that, prior to his making these incriminating statements, Sacramento deputies had handcuffed him to the handrails in a jail elevator and beat and kicked him, and stomped on his leg irons, scarring his ankles. According to Hawkins, the Sacramento deputies threatened him with further physical abuse if he refused to cooperate. Hawkins also asserts that, on another occasion, still prior to his confession, Sacramento deputies took him to an abandoned building, where they again beat him.

Oklahoma detectives testified at the *Jackson v. Denno* hearing that they were not aware of any physical coercion by Sacramento jail officials. Toward the end of their October 1985 interview with Hawkins, the Oklahoma detectives did ask him if any officers had been "mean" to him. Trial tr. vol. IV at 222. Although Hawkins replied, just those over at the Sacramento county jail, *see id.* at 223, the Oklahoma detectives made no further inquiry.

Immediately after videotaping Hawkins's statement, however, Oklahoma detectives requested photographs of his tattoos. These photographs depict several body areas where Hawkins asserted Sacramento deputies had injured him, including his ribs and one of his ankles. Contrary to Hawkins's allegations, these photographs do not show any injuries. Further, immediately prior to transporting

-29-

him to San Diego, San Diego detectives observed Hawkins as he dressed for the trip. Those detectives also did not observe any injuries.

In addition to hearing this evidence, the trial court viewed Hawkins's videotaped statement, ruling it was clearly voluntary and that, in fact, Hawkins looked like he was having a good time when making it. *See id.* at 251-52. The trial judge remarked that he did not know how anyone's statement "could ever come across . . . [more] voluntarily given than that one unless he got up on the church pew or at the altar and gave it there or perhaps at the podium taking the place of a preacher." *Id.* at 251.

Hawkins fails to allege what further evidence he could have presented in support of his claim that his custodial statements were coerced, if the trial court had in fact appointed an investigator prior to trial. [9] Thus, his allegations that not having an investigator substantially prejudiced his defense remain too speculative to warrant habeas relief. *See Caldwell*, 472 U.S. at 323 n.1 (denying relief in light of defendant's "undeveloped assertions that the requested assistance would be beneficial"); *Rojem*, 245 F.3d at 1139 (denying habeas relief where petitioner's alleged need for investigator was "speculative, merely suggesting, without more,

---

[9] Even if the trial court had suppressed Hawkins's California custodial statements, there was still significant evidence Hawkins committed these crimes, in light of Pitts' and Lovell's testimony implicating Hawkins in the abductions and the strong circumstantial evidence indicating Linda Thompson died during the kidnapping.

-30-

that such assistance would have been beneficial"); *see also, e.g., Rogers*, 173 F.3d at 1286-87; *Moore v. Reynolds*, 153 F.3d 1086, 1112 (10th Cir. 1998).

**D.** **Reliability of five-year-old witness's testimony.** Hawkins argues that the trial court should have excluded five-year-old Lori Thompson's testimony. Hawkins asserts that admitting this testimony deprived him of a fair trial, violating the Eighth and Fourteenth Amendments. The relevant inquiry in a federal habeas proceeding is whether admitting this testimony resulted in a fundamentally unfair trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 70 (1991); *Elliott v. Williams*, 248 F.3d 1205, 1214 (10th Cir.), *cert. denied*, 122 S. Ct. 286 (2001); *see also, e.g., Matthews*, 83 F.3d at 332 (noting, on habeas review, this court need not address state or federal evidentiary rules).

Before the state court, however, Hawkins challenged this testimony only on state-law grounds. *See Hawkins*, 891 P.2d at 594-95; *see also* Direct-appeal br. at 86. Specifically, Hawkins argued that the State had failed to meet state-law requirements for admitting a child's testimony and that, under Oklahoma evidence law, the child's testimony was not admissible in any event because its probative value was outweighed by its prejudice to his defense. The state appellate court held that the trial judge correctly determined that Lori was competent to testify under state law--she "(1) has personal knowledge of the matters at issue, and (2) has taken an oath or similar affirmation to tell the truth." *Hawkins*, 891 P.2d

at 594 (addressing requirements under Okla. Stat. tit. 12, § 2603). In addition, the state appellate court held that Lori's "eye-witness testimony" was "relevant, and highly probative," and that, although it was "no doubt . . . poignant," there was "no unfair prejudice whatsoever." *Id.* at 594-95.

Hawkins, therefore, has never fairly presented the substance of his federal claim to the state court. *See, e.g., Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) (noting petitioner's failure to apprise state courts that evidentiary challenge was based in part on federal due process concerns was insufficient to exhaust § 2254 due process claim; further noting mere similarity of claims was insufficient); *Anderson*, 459 U.S. at 6-7 (holding habeas petitioner failed to present federal habeas claim challenging jury instruction fairly to state court where, in state court, he challenged instruction relying solely on state law); *see also Picard*, 404 U.S. at 276-77. As such, his federal claim remains unexhausted. [10] *See, e.g., Anderson*, 459 U.S. at 8. At this point in the proceedings, Oklahoma courts would deem Hawkins to have procedurally defaulted this claim. *See Coleman*, 501 U.S. at 735 n.*. Although he had an opportunity to do so, Hawkins has never addressed this claim's exhaustion or

---

[10]     The State's failure to argue exhaustion to the district court will not preclude it from doing so now on appeal. *See Hale v. Gibson*, 227 F.3d 1298, 1327 n.12 (10th Cir. 2000) (citing 28 U.S.C. § 2254(b)(3)), *cert. denied*, 533 U.S. 957 (2001).

procedural default. Nor did he assert either any cause that might excuse this default or that this court's failure to consider this claim's merit would result in a fundamental miscarriage of justice. *See, e.g,. id.* at 750. We therefore decline to address the merit of this habeas claim.

      ***E.***      ***Prosecutorial misconduct.***      Hawkins asserts that three categories of improper comments made by prosecutors violated the Eighth and Fourteenth Amendments. *See* Appellant's opening br. at 45. Where the alleged misconduct does not implicate a specific constitutional right, Hawkins will be entitled to habeas relief only if the prosecutor's challenged remark, viewed in light of the trial as a whole, resulted in a fundamentally unfair proceeding. *See, e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974); *Neill v. Gibson*, 278 F.3d 1044, 1058 (10th Cir. 2001). On the other hand, if that comment implicated a specific constitutional right, Hawkins need not establish that the remark rendered the entire proceeding fundamentally unfair. *See Neill*, 278 F.3d at 1058; *see also, e.g., Mitchell v. Gibson*, 262 F.3d 1036, 1061 n.12 (10th Cir. 2001).

      Although Hawkins presented these federal claims to the state appellate court, the Oklahoma Court of Criminal Appeals specifically addressed only some of these challenged remarks. *See Hawkins*, 891 P.2d at 595, 597-98. Nonetheless, we still afford deference to that court's decision denying relief on these claims, even though the state appellate court did not specify the reasons underlying its

decision. *See Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999); *see also, e.g., Neill*, 278 F.3d at 1058 n.6. Therefore, we will "uphold the Oklahoma appellate court's result . . . if our independent review persuades us the decision was not contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented." *Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000), *cert. denied*, 533 U.S. 933 (2001), *abrogated on other grounds by Neill v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001). For the following reasons, the Oklahoma appellate court's decision denying relief on these claims was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

        ***1.     Appeal to societal alarm.*** During second-stage closing argument, the district attorney remarked that he had "[p]ut on . . . evidence a little earlier and one of the people in the audience looked at me and said, Mr. Macy, when is it going to stop?" Trial tr. vol. VI at 193. The trial court, however, sustained defense counsel's objection to this reference as prejudicial and inflammatory, and admonished the jury to disregard it. *See id.* The state appellate court held that the trial court had thereby cured any error. *See Hawkins*, 891 P.2d at 598. That conclusion was reasonable. *See, e.g., Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (considering, among other things, whether

-34-

curative instruction might have mitigated challenged remark's effect); *Duvall v. Reynolds*, 139 F.3d 768, 794 (10th Cir. 1998) (same); *see also, e.g., Moore v. Gibson*, 195 F.3d 1152, 1171 (10th Cir. 1999).

Following this remark, the district attorney continued, asking when would all this end. *See* Trial tr. vol. VI at 194. Hawkins argues that this comment referenced another abduction, occurring at the same mall only a few weeks before Hawkins's trial and of which jurors were aware. In fact, the trial court and the attorneys had questioned most jurors individually, during voir dire, about this more recent abduction, clarifying that it did not in any way implicate Hawkins.

It is not at all clear, however, that the prosecutor's remarks here actually referenced this more recent abduction, rather than the State's evidence concerning Hawkins's ongoing violent criminal conduct. Such a remark would have been fair comment on the evidence. *Cf., e.g., United States v. Hartsfield*, 976 F.2d 1349, 1355 (10th Cir. 1992) (direct criminal appeal). In either event, this remark did not result in a fundamentally unfair proceeding.

The district attorney continued, arguing

[t]here have been tears in this courtroom. Too many tears by too many people. And it's time for those tears to stop and the only way those tears are going to stop [is] when those two reach death row. Only then would it stop and as much as I hate putting the burden on you, only you can stop it.

The Oklahoma City Police Department ha[s] done an outstanding job. They've brought this evidence over here and I

reviewed that evidence and I filed this case and [Assistant District Attorney] Barry Albert and I have put it before you and we've had the help of San Diego and Sacramento and Seminole and we've done everything we can do. You've got to do the rest.

Trial tr. vol. VI at 194.

The state appellate court determined that the prosecutor, with this remark, had "improperly attempted to evoke sympathy and societal alarm," but the court nevertheless reasonably denied relief. *See Hawkins*, 891 P.2d at 598. Even "[a]n improper appeal to societal alarm typically does not amount to a denial of due process." *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000). That is the case here.

### 2. *Prosecutor's vouching for his witness's credibility/ Caldwell [11] violation.*

Hawkins also asserts several other challenges to the remark about when all this would end. Hawkins argues that the prosecutor, by that comment, improperly vouched for the credibility of his law enforcement witnesses and drew attention to the prosecutor's own experience. This remark, however, did not result in a fundamentally unfair trial. *See Hopkinson v. Shillinger*, 866 F.2d 1185, 1209-11 (10th Cir. 1989). The evidence against Hawkins was overwhelming and this comment would not have affected the jury's ability to judge that evidence fairly. *See id.* at 1210.

---

[11] *Caldwell*, 472 U.S. 320 .

Hawkins further argues that this same remark also violated *Caldwell*, 472 U.S. 320. In addition, Hawkins asserts the prosecutor violated *Caldwell* when, during his second-stage closing argument, he argued:

> I know we have put you through an ordeal that's unbelievable, not only physically but emotionally. And as district attorney of this county I was responsible for the evidence that was put on today, for bringing that evidence here and I know the effect it had on me and I saw the effect it had on you and I sincerely apologize. I would not have done it had I not felt it was . . . a necessary part of this trial. Even so, I apologize to each of you.

Trial tr. vol. VI at 189.

"*Caldwell* precludes improperly diminishing capital jurors' sense of responsibility for imposing a death sentence. This includes remarks inaccurately describing the jury's role under state law." *Neill*, 278 F.3d at 1059 (citation omitted). Considered in the context of the entire trial, *see id.*, however, these comments did not minimize or otherwise mislead jurors concerning their capital sentencing role. *See, e.g., Fox v. Ward*, 200 F.3d 1286, 1300 (10th Cir. 2000) (holding prosecutor's argument that, before he decided to bring capital case to jury, police had to bring sufficient evidence to prosecutor, did not mislead jurors as to their sentencing responsibility)); *Moore*, 195 F.3d at 1174-75 (holding prosecutor's remark that jurors were only one little cog in community and prosecutor had to determine initially whether case warranted death sentence

before it could be brought to jury did not mislead jurors as to their sentencing role).

Further, during voir dire and second-stage closing argument, prosecutors and defense counsel, in fact, emphasized that it was the jurors' responsibility to make the capital sentencing decision. *See Neill*, 278 F.3d at 1059. In addition, the trial court specifically instructed jurors that it was their "duty to determine the penalty to be imposed." O.R. at 271 (capital sentencing instruction No. 1); *see also Neill*, 278 F.3d at 1059; *Walker*, 228 F.3d at 1243.

**3.** **Referencing other crimes.** Evidence at trial indicated that, just before Hawkins abducted Linda Thompson and her children, he had tried to abduct another woman. A mall security guard making his rounds thwarted this earlier abduction attempt. Hawkins challenges the prosecutor's first-stage opening remark that this woman's life was spared "by the grace" of a security guard. Trial tr. vol. III at 7. This remark, however, did not result in an unfair trial. The trial court later admitted evidence of this attempted abduction, over defense counsel's objection. *See id.* vol. V at 7-8. The state appellate court, therefore, reasonably denied relief, holding the trial court had properly admitted this evidence and the prosecutor thus did not err in referring to this evidence during his opening argument. *See Hawkins*, 891 P.2d at 595.

Nor did the prosecutor's reference, during first-stage opening argument, to Hawkins and Shelton as "ex-convicts," trial tr. vol. III at 7, result in a fundamentally unfair trial. Hawkins's defense attorney had already mentioned numerous times during voir dire that Hawkins had other criminal convictions and had previously served time in prison. *See id.* vol. I at 263, 266-68, 271-74, 276-77, 306; vol. II at 20, 192, 287, 306, 318, 320.

Additionally, Hawkins challenges the prosecutor's remark, during first-stage opening argument, that he would "gladly" prove Hawkins was guilty. *Id.* vol. III at 5. This remark was not sufficiently significant to have affected the jury's verdict. *See Boyd v. Ward*, 179 F.3d 904, 920 (10th Cir. 1999).

*F. Admission of evidence concerning victim's personal history and character as a mother.* Hawkins asserts that the trial court denied him a fundamentally fair capital trial, contrary to the Eighth and Fourteenth Amendments, when it permitted the State to present, during the trial's first stage, evidence of Linda Thompson's attributes as a mother and her personal history, and when it later incorporated that evidence into the capital sentencing stage. Specifically, Linda Thompson's boyfriend testified about Thompson's concern for her children; her uncle testified that she was a good mother, who did not touch alcohol or smoke during her pregnancies, and kept her children clean and well-nourished; and Thompson's former husband testified about her concern for her

-39-

children--for example, she wanted to fence in their yard so the children could play safely, she overreacted at times when the children did not feel well, and she kept her children in a clean environment. In addition, there was testimony that Thompson was a responsible individual, a serious aerobics student and former high school athlete; had graduated from a Minnesota college with a biology degree; and was working as a microbiologist.

Although Hawkins presented the state appellate court with both state- and federal-law challenges to the trial court's admission of this evidence, the appellate court denied relief, specifically applying only Oklahoma law. *See Hawkins*, 891 P.2d at 593. Nonetheless, because the federal-law question's merit was before the state appellate court, *see, e.g.,* Direct-appeal brief at 47 (arguing admitting this evidence deprived Hawkins of fair trial), we defer to that court's decision denying relief, even though the state appellate court did not set forth its specific reasoning on the federal-law claim. *See, e.g., Aycox*, 196 F.3d at 1177; *see also, e.g., Walker*, 228 F.3d at 1241.

The federal question here, then, is limited to whether the trial court's admission of this evidence resulted in a fundamentally unfair proceeding. *See Estelle*, 502 U.S. at 67-68, 70; *Mitchell*, 262 F.3d at 1053; *see also Smallwood*, 191 F.3d at 1275 (addressing, among other claims, Fifth and Eighth Amendment challenges to state court's evidentiary ruling). Here, in light of the entire record,

*see Mitchell* , 262 F.3d at 1053 n.8, we cannot say that the admission of this evidence resulted in a fundamentally unfair trial, at either stage. [12] The Oklahoma Court of Criminal Appeals' decision denying relief on this claim, therefore, was not unreasonable or contrary to clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

> **G.** ***Admitting evidence of unadjudicated crimes.*** Hawkins argues the trial court's admission of evidence of his unadjudicated criminal conduct during the trial's second stage deprived him of a fair and reliable capital sentencing proceeding, contrary to the Eighth and Fourteenth Amendments. The trial court permitted the State to present, in support of the continuing threat aggravator, evidence that Hawkins had abducted and sexually assaulted two teenage girls at gun and knife point, kidnapped and robbed two other women, and murdered an acquaintance. The state appellate court upheld the trial court's decision to admit this evidence. *See Hawkins* , 891 P.2d at 597. That decision was not contrary to clearly established Supreme Court precedent, nor was it otherwise unreasonable. *See* 28 U.S.C. § 2254(d). This court has, on numerous occasions, upheld the State's use of unadjudicated offenses in a capital sentencing

---

[12] Although Hawkins asserts that the trial court's incorporating this evidence into the capital sentencing proceeding violated the Eighth Amendment, he does not make any more specific claim.

-41-

proceeding. *See, e.g., Smith v. Gibson*, 197 F.3d 454, 460 (10th Cir. 1999); *Smallwood*, 191 F.3d at 1276 (citing cases).

Hawkins now asserts, however, that the Supreme Court's subsequent decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), [13] calls into doubt this court's line of cases upholding such use of unadjudicated offenses. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490; *see also, e.g., United States v. Combs*, 267 F.3d 1167, 1180 (10th Cir. 2001). Here, however, the State charged Hawkins with, and the jury convicted him of, first-degree murder. *See* Okla. Stat. tit. 21, § 701.7(B).

Hawkins further argues, however, that, despite a first-degree murder conviction, Oklahoma law still does not permit a capital sentencing jury to consider imposing a death sentence unless the State further proves beyond a reasonable doubt the existence of at least one statutory aggravating factor.

---

[13]     The Supreme Court decided *Apprendi* after the district court denied Hawkins habeas relief in this case. Nonetheless, the State does not assert any retroactivity problem or other procedural reason that might preclude this court's considering the merits of Hawkins's *Apprendi* argument. We therefore go directly to this argument's merit. *See, e.g., Clayton v. Gibson*, 199 F.3d 1162, 1170 n.2 (10th Cir. 1999).

Assuming *Apprendi* does further apply to the State's case in aggravation, [14] Oklahoma's capital sentencing procedure still requires the State to charge and prove to a jury beyond a reasonable doubt the existence of at least one aggravating factor. Okla. Stat. tit. 21, §§ 701.11, 701.12. Those requirements satisfy *Apprendi*. *See* 530 U.S. at 490.

Here, Hawkins essentially argues only that *Apprendi* further requires the State to prove beyond a reasonable doubt the *evidence* it presents in support of the continuing threat aggravator. *See* Appellant's reply br. at 15-17. This court has previously rejected this argument, however. *See, e.g., Smith*, 197 F.3d at 460; *Smallwood*, 191 F.3d at 1276, citing cases. *Apprendi* does not cast doubt on those decisions.

## IV. CONCLUSION

For these reasons, we AFFIRM the district court's denying Hawkins habeas relief.

---

[14] *But see Kinder v. Bowersox*, 272 F.3d 532, 549 n.12 (8th Cir. 2001) (noting that *Apprendi* does not apply to aggravating factors in capital cases because, among other reasons, those factors do "not increase the penalty beyond the statutory maximum, which was death").

00-6204, <u>Hawkins v. Gibson</u> (Death Penalty)

**LUCERO**, Circuit Judge, concurring:

Because the majority correctly concludes that Hawkins' claim of ineffective assistance of counsel is procedurally barred, I join the opinion of the court. If relief from procedural proscription is to be afforded to this defendant, such relief must come from higher authority.

I write separately to note that the opinion of the court should not be read as an imprimatur of approval on the unacceptable practice of trial lawyers forsaking their duties to investigate potential mitigating evidence, to inform defendants of their constitutional right to present mitigating evidence, and to explain the general significance of mitigating evidence to clients in capital cases. This is a serious matter, and I am concerned with what I view as a disturbing tendency on the part of defense counsel to forego mitigation investigation altogether and to neglect to explain to defendants the potential value of the specific evidence that could be offered in order to allow a jury to have a complete picture in deciding a death sentence issue. <u>See</u>, <u>e.g.</u>, <u>Battenfield v. Gibson</u>, 236 F.3d 1215, 1227–29 (10th Cir. 2001) (trial counsel failed to investigate and present mitigating evidence during the second stage of a capital case); <u>Hale v. Gibson</u>, 227 F.3d 1298, 1314–16 (10th Cir. 2000) (same), <u>cert. denied</u>, 533 U.S. 957 (2001); <u>Mayes v. Gibson</u>, 210 F.3d 1284, 1289 (10th Cir.) (same), <u>cert. denied</u>, 531 U.S. 1020 (2000); <u>Boyd v. Ward</u>, 179 F.3d 904, 917–19 (10th Cir. 1999) (same); <u>Newsted v.</u>

<u>Gibson</u>, 158 F.3d 1085, 1099–100 (10th Cir. 1998) (same).  When the state contends that a capital defendant has waived the right to present mitigating evidence, information regarding trial counsel's investigative efforts with respect to mitigation, along with facts and advice rendered by counsel to the client, enables us to sharply focus our record review to determine whether the waiver was knowing and intelligent.

## I

Before the Oklahoma Court of Criminal Appeals ("OCCA"), Hawkins argued that "by acquiescing to his demand trial counsel denied him effective assistance, and that by allowing trial counsel to present nothing the trial court allowed him to commit 'state sanctioned suicide.'"  <u>Hawkins v. State</u>, 891 P.2d 586, 598 (Okla. Crim. App. 1995).  As the court's opinion notes, this argument is different from the one Hawkins has presented to the federal courts.  Because the failure-to-investigate-and-present-mitigating evidence argument has not been presented to the Oklahoma state courts, it has not been exhausted, and at this point the state courts would consider it procedurally barred.  Consequently, we are unable to review the merits unless Hawkins can demonstrate cause and prejudice for the default or establish that a fundamental miscarriage of justice will result if the merits of the claim are not addressed.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  Hawkins has argued that his ineffective assistance of counsel claim

is not procedurally barred because it was raised on direct appeal (R. Doc. 21 at 10–11) but has not argued cause and prejudice for the default or that a fundamental miscarriage of justice will result if the merits of this claim are not addressed.

Had Hawkins pursued a fundamental miscarriage of justice argument, it is unlikely that it would have succeeded because a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). To demonstrate "actual innocence" in a capital case, "one must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." Sawyer v. Whitley, 505 U.S. 333, 336 (1992). I hope that the Supreme Court will one day reevaluate this premise because the Court has consistently acknowledged that exceptions to the strict rules of unreviewability in habeas claims "must exist to prevent violations of fundamental fairness." Id. at 351 (Blackmun, J., concurring in the judgment). One exception to the above standard should exist when mitigating evidence is absent from a capital trial because counsel has failed to investigate its existence, neglected to explain its significance to the defendant, and has acquiesced in the defendant's "waiver" of his right to present such evidence. Instead, the current actual innocence standard "implicitly repudiates

the requirement that the sentencer be allowed to consider all relevant mitigating evidence, a constitutive element of our Eighth Amendment jurisprudence." Id. at 368 (Stevens, J., concurring in the judgment).

## II

Defendants have a constitutionally protected right to present mitigating evidence during the sentencing phase of a capital case. Williams v. Taylor, 529 U.S. 362, 393 (2000); see also Sawyer, 505 U.S. at 342–43 ("[T]he defendant must be permitted to introduce a wide variety of mitigating evidence pertaining to his character and background."); Hitchcock v. Dugger, 481 U.S. 393, 394 (1987) ("[I]n capital cases, the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence." (quotation omitted)). In discussing the constitutionality of the death penalty, the Supreme Court has noted that sentencing discretion in capital cases must be "'directed and limited'" to ensure that the death penalty is "imposed in a more consistent and rational manner." Lockett v. Ohio, 438 U.S. 586, 601 (1978) (quoting Gregg v. Georgia, 428 U.S. 153, 188–89 (1976) (judgment of the Court and opinion of Stewart, Powell, and Stevens, JJ.)). Part of directing sentencing discretion is requiring the sentencer to consider mitigating evidence—such as character and criminal history evidence—in addition to the circumstances of the particular offense. See Woodson v. North Carolina, 428 U.S. 280, 304 (1976) (plurality opinion);

Lockett, 438 U.S. at 604 ("[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.").

Consideration of mitigating factors allows a jury to make an individualized sentencing determination based upon the defendant's specific life experiences and characteristics. Battenfield, 236 F.3d at 1228. No individual is so devoid of redeeming characteristics at some stage of life that not one word can be said at the sentencing phase asking that the defendant's life be spared. Humanizing the defendant is important in ensuring that he is not reduced solely to the violent acts that caused his conviction. "The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence." Lockett, 438 U.S. at 605. However, when nothing whatsoever is advanced on behalf of a defendant by his advocate, the sentencer will likely draw negative inferences from such silence.

**III**

Hawkins contends that his trial counsel did not investigate mitigating evidence or adequately explain its import to him, thus preventing him from

-5-

knowingly and intelligently waiving his right to present such evidence. After the jury returned a guilty verdict, Hawkins instructed counsel "not to do anything else in the way of defending [him]." (Appellant's Direct Appeal Br. at 22.) Consequently counsel did not make an opening statement, present mitigating evidence, or make a closing statement. (Id. at 23.)

The Sixth Amendment requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland v. Washington, 466 U.S. 668, 691 (1984). Included within this duty is a responsibility to investigate a defendant's background for potential mitigating evidence. Battenfield, 236 F.3d at 1228.

This Court has used the following factors to examine an ineffective assistance of counsel claim based on counsel's failure to prepare or present any mitigating evidence during the penalty phase of a capital trial after the defendant instructed counsel not to present any mitigating evidence: (1) investigative efforts of defense counsel prior to the beginning of the penalty phase, (2) counsel's penalty phase strategy, (3) advice rendered to defendant prior to defendant's alleged decision to waive the presentation of mitigating evidence, and (4) trial court's examination of defendant regarding his alleged waiver. Id. at 1227.[1]

_____

[1] Based on the evidence presented at the state evidentiary hearing in     Battenfield ,
(continued...)

-6-

Without investigating possible mitigating evidence, counsel will not be able to make a reasonable tactical choice not to present mitigating evidence. Absent investigation, counsel will also be unable to adequately advise a defendant to knowingly and intelligently waive his right to present mitigating evidence. See Blanco v. Singletary, 943 F.2d 1477, 1502 (11th Cir. 1991) (noting that a defendant's desire not to present mitigating evidence does not terminate counsel's responsibilities at the sentencing phase, and that counsel may not "blindly follow" such commands because "although the decision whether to use such evidence is for the client, the lawyer first must evaluate potential avenues and advise the client of those offering potential merit." (quotation omitted)). Although failing to present mitigating evidence does not make counsel per se ineffective, before such a decision will be deemed strategic, counsel "must have chosen not to present mitigating evidence after having investigated the defendant's background, and that choice must have been reasonable under the circumstances." Breechen v. Reynolds, 41 F.3d 1343, 1369 (10th Cir. 1994) (quotation omitted); see also Hale,

---

[1](...continued)
we concluded that "there is no indication [counsel] ever explained the general meaning of mitigation evidence to [defendant] or what specific mitigation evidence was available," and that "[counsel's] failure to investigate clearly affected his ability to competently advise [defendant] regarding the meaning of mitigation evidence and the availability of possible mitigation strategies." Id. at 1229. Consequently, counsel's performance was deficient and "culminated in [defendant] waiving the right to present mitigating evidence," id. at 1230, resulting in a waiver that was neither knowing nor intelligent, id. at 1233.

227 F.3d at 1316 (concluding that trial counsel's complete failure to investigate possible mitigation evidence caused his performance to be "well below the level of any competent attorney during the penalty phase"); Mayes, 210 F.3d at 1289–90 (concluding that counsel's decision not to investigate possible mitigating evidence was unreasonable). Although strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690–91; see also Romano v. Gibson, 239 F.3d 1156, 1181 (10th Cir. 2001). In other words, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.

When the state contends that a capital defendant waived the presentation of mitigating evidence, an appellate court must be especially watchful before crediting the allegation. We must ensure that defendant was informed that he has a right to present mitigating evidence; that defendant was apprised of the nature, role, and importance of mitigating evidence; and that counsel undertook an investigation to discover mitigating evidence, or else explained to the defendant why such investigation did not take place. See, e.g., Wallace v. Ward, 191 F.3d

1235, 1248 (10th Cir. 1999) (concluding that petitioner's trial counsel was not ineffective in failing to investigate or present mitigating evidence during the sentencing phase of a capital case because under "the unique facts of this case," petitioner waived his right to present such evidence after being informed about the nature and importance of mitigating evidence).

Interestingly, sometime after Hawkins' conviction, the OCCA established formal guidelines for trial courts to follow "when a defendant refuses to allow the presentation of mitigating evidence in the sentencing stage." Wallace v. State, 893 P.2d 504, 512 (Okla. Crim. App. 1995). These guidelines require a trial court to: (1) inform the defendant of the right to present mitigating evidence, and what mitigating evidence is; (2) inquire both of the defendant and his attorney (if not pro se) whether he or she understands these rights; (3) inquire of the attorney if he or she has attempted to determine from the defendant whether any mitigating evidence exists; (4) have trial counsel advise the court what mitigating evidence exists; (5) inquire of a defendant and make a determination on the record whether the defendant understands the importance of mitigating evidence in a capital sentencing scheme, understands such evidence could be used to offset the aggravating circumstances proven by the prosecution in support of the death penalty, and understands the effect of failing to present that evidence; (6) inquire, after being assured the defendant understands these concepts, whether defendant

-9-

desires to waive the right to present such mitigating evidence; and (7) make findings of fact regarding the defendant's understanding and waiver of rights. Id. at 512–13. Despite our observation that these guidelines appear to be "little more than commonsense," Battenfield, 236 F.3d at 1233, and that courts should apply them without being expressly instructed to do so, the trial court in Hawkins' case conducted no such inquiry regarding his waiver of the right to present mitigating evidence.

In keeping with our prior holdings, I would conclude that, as a constitutional minimum, failing to interview family members and acquaintances regarding possible mitigating aspects of a defendant's background would be a violation of counsel's duty to investigate because such investigation is almost always necessary in a capital case. See, e.g., Battenfield, 236 F.3d at 1228; Breechen, 41 F.3d at 1368–69.

Absent an evidentiary hearing, it is practically impossible to determine the extent of trial counsel's investigation regarding potential mitigation evidence in the present case. We do, however, have two affidavits from Hawkins' siblings, both of whom stated that they were not contacted by trial counsel but that they would have testified had they been contacted. (R. Doc. 14 App. C at 1; id. App. E at 1–2.) We also have a social worker's report on Hawkins as a juvenile (id. App. F) and a 1968 docket entry sheet regarding the conviction of Hawkins' father for

-10-

unlawful possession of a firearm (<u>id.</u> App. D). The record does not reveal whether trial counsel ever possessed or sought this information. It is precisely in cases such as this that it is critical for habeas courts to have the opportunity to review the merits of ineffective assistance of counsel claims based on trial counsel's failure to investigate possible mitigating evidence in capital cases. In previous cases we have concluded that trial counsel was constitutionally ineffective for failing to conduct such investigation. Yet because of the limited opportunity that federal courts have to review state court convictions and sentences, we are unable to determine if Hawkins' trial counsel was constitutionally deficient in failing to investigate possible mitigation evidence and whether, as a result of such deficient performance, there is a reasonable probability that "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." <u>Strickland</u>, 466 U.S. at 695.