**Alan James McDONALD, Plaintiff–Appellant,**

v.

**Ron CHAMPION, Warden; Attorney General of the State of Oklahoma, Defendants–Appellees.**

No. 90–5099.

United States Court of Appeals, Tenth Circuit.

April 28, 1992.

Murray Weiner of Sherman & Howard, Colorado Springs, Colo., for plaintiff-appellant.

Diane L. Slayton, Asst. Atty. Gen. (Robert H. Henry, Atty. Gen., with her on the briefs), Oklahoma City, Okl., for defendants-appellees.

Before ANDERSON and SETH, Circuit Judges, and SAFFELS,* Senior District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

In this case, we are asked to decide whether an Oklahoma state court decision that interpreted Oklahoma's first-degree felony murder statute to include the underlying crime of attempted robbery with a dangerous weapon unforeseeably enhanced the punishment of an offense in violation of defendant's Fourteenth Amendment due process rights. We are also asked to determine whether the trial court violated defendant's due process rights by failing to instruct the jury on all the elements of first-degree felony murder.

Petitioner–Appellant, Alan J. McDonald ("petitioner") appeals from a district court order denying his Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Because we find that both of petitioner's asserted grounds for granting the petition lack merit, we affirm.

I.

On June 7, 1982, petitioner was sentenced by the Tulsa County District Court to life imprisonment for the crime of first-degree murder and twenty years imprison-

---

* Honorable Dale E. Saffels, United States Senior District Judge for the District of Kansas, sitting by designation.

ment for the crime of assault with intent to kill. The convictions arose from an attempted robbery occurring at a fast food restaurant in Tulsa, Oklahoma on November 2, 1981. During the course of the attempted robbery, two employees of the restaurant were injured, one of whom subsequently died.[1] Petitioner's wife, Shari McDonald, who accompanied him with a gun, was also convicted.

The first-degree murder charge was based on Oklahoma's first-degree felony-murder provision in effect on November 2, 1981 that stated:

> A person commits the crime of murder in the first-degree when he takes the life of a human being, regardless of malice, *in the commission of* forcible rape, *robbery with a dangerous weapon*, kidnapping, escape from lawful custody, first-degree burglary or first-degree arson.

21 Okla.Stat. § 701.7 (1976) (emphasis added). Oklahoma's second-degree murder statute in effect at that time applied to homicide "[w]hen perpetrated by a person engaged in the commission of *any felony* other than the unlawful acts set out in [the first-degree felony-murder provision]." 21 Okla.Stat. § 701.8 (1976) (emphasis added). Under Oklahoma law, a person who is convicted of first-degree murder must be punished by death or by imprisonment for life, while a person convicted of second-degree murder must receive a sentence for no less than ten years nor more than life. 21 Okla.Stat. § 701.9 (1976).

Both prior to trial and at trial, petitioner's counsel objected to the first-degree murder charge on the grounds that the state had alleged an underlying crime of *attempted* robbery with a firearm and that only the completed offense of robbery with a firearm could serve as a predicate to the offense. While conceding "some attempted judicial legislation by the Court of Criminal Appeals in this regard," counsel assert-

ed that petitioner could only be convicted under the second-degree murder statute. Tr. of April 20, 1982 at 21–22; Tr. at 326–27.

The trial court rejected counsel's argument and in due course instructed the jury on the elements of attempted robbery as a basis for first-degree murder. The trial court relied on *James v. State*, 637 P.2d 862 (Okl.Crim.App.1981), decided on November 13, 1981, eleven days after petitioner's alleged offense, where the Oklahoma Court of Criminal Appeals held that the phrase "in the commission of ... robbery with a dangerous weapon" encompassed both armed robbery and attempted armed robbery. *Id.* at 864–65. The trial court's decision to instruct the jury on the first-degree offense was affirmed by the Court of Criminal Appeals in *McDonald v. State*, 674 P.2d 51 (Okl.Crim.App.1984).

## II.

### A. Ex Post Facto Application

■ Petitioner asserts two grounds for habeas relief. First, he argues that the *ex post facto* application of the *James* decision was unforeseeable and therefore a violation of his Fourteenth Amendment due process rights.

■ The United States Constitution provides that neither Congress nor any State shall pass any "ex post facto Law." *See* U.S. Const., Art. I, § 9, cl. 3; U.S. Const., Art. I, § 10, cl. 1. An *ex post facto* law is one that among other things (1) makes conduct criminal that was legal when done, or (2) inflicts greater punishment for an offense than the law existing when the offense was committed. *See Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). While the constitutional Ex Post Facto clauses apply by their own force

---

1. Petitioner testified at trial that while attempting to perpetrate the crime he struck each employee on the head more than once with a pipe wrench but that he only intended to knock them unconscious. Tr. at 303–08. The state's assistant chief medical examiner testified that the deceased employee had probably received a minimum of seventeen or eighteen separate blows to her body by a blunt instrument and that her skull had been fractured in at least six places, although he conceded that the pipe wrench was capable of delivering multiple wounds with a single blow. *Id.* at 268–75, 280.

only to laws passed by Congress or state legislatures, the principles upon which they are based are fundamental to our concept of constitutional liberty and therefore protected by the Due Process Clause of the Fifth and Fourteenth Amendments. *See Marks v. United States,* 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977). Consequently, "[i]f a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964); *see also Marks,* 430 U.S. at 192, 97 S.Ct. at 993.

" 'The purposes behind the prohibition on *ex post facto* laws are twofold: to restrain legislatures and courts from arbitrary and vindictive action and to prevent prosecution and punishment without fair warning.' " *Devine v. New Mexico Dept. of Corrections,* 866 F.2d 339, 344 (10th Cir.1989) (citation omitted); *see also Miller,* 482 U.S. at 429–30, 107 S.Ct. at 2450. The Supreme Court has held that an "unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law" and therefore violates due process. *Bouie,* 378 U.S. at 353, 84 S.Ct. at 1702; *see also Marks,* 430 U.S. at 192, 97 S.Ct. at 993. We have held that the dual underpinnings of the Ex Post Facto clauses compel the same result when a judicial interpretation has unforeseeably and retroactively enhanced the punishment of conduct that was already criminal when committed. *See Devine,* 866 F.2d at 344–45.

Here, therefore, we must determine whether Oklahoma's construction of the first-degree felony murder statute unforeseeably enhanced the punishment for an offense that, given the opposite interpretation, would be punishable only under the second-degree felony statute.[2]

"The Supreme Court has not been overly helpful in indicating what constitutes an

'unforeseeable' judicial expansion of criminal liability." *Devine,* 866 F.2d at 345. Using *Bouie* as a guide, we have followed two complementary standards for determining when a judicial interpretation is unforeseeable. In *Devine* we determined that "if a criminal statute is 'narrow and precise' on its face, any judicial expansion of that statute beyond its own terms will be considered unforeseeable." *Devine,* 866 F.2d at 345 (citing *Bouie,* 378 U.S. at 352–53, 84 S.Ct. at 1701–02). More recently, we have also indicated that our determination turns on whether the construction is so " 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue' " as to prevent its application retroactively. *Lopez v. McCotter,* 875 F.2d 273, 276 (10th Cir.), *cert. denied,* 493 U.S. 996, 110 S.Ct. 549, 107 L.Ed.2d 546 (1989) (quoting *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1702); *see also id.* at 277; *accord United States v. Morehead,* No. 91–7010, 959 F.2d 1489, 1512 slip op. at 46 (10th Cir. March 4, 1992). As discussed below, we find that neither of these standards supports petitioner's claim of a due process violation.

Petitioner offers two arguments in support of the opposite conclusion: first, he argues that on its face the statutory language is narrow and precise and that it does not encompass attempts; second, he argues that even if the language is not narrow and precise, "other factors," such as the language and history of the act, the state's rules of statutory construction, and the felony murder statutes in other states, made the court's interpretation unforeseeable.

### 1. *Narrow and Precise*

█ Petitioner correctly argues that if Oklahoma's construction was retroactively applied to conduct falling outside of the statute's "narrow and precise" language, then petitioner was deprived of his due process right of fair warning. In *Bouie,* the Supreme Court found that unlike a

---

**2.** Oklahoma courts are of course free to apply their interpretation in future cases, regardless of how unexpected it may have been. *Bouie,* 378

U.S. at 362, 84 S.Ct. at 1707 ("such a construction is of course valid for the future").

vague or overbroad statute that "at least gives a potential defendant some notice," a narrow and precise statute gives no notice when applied to conduct outside of its coverage. *Bouie*, 378 U.S. at 352, 84 S.Ct. at 1702. The Court explained: "When a statute on its face is narrow and precise ... it lulls the potential defendant into a false sense of security, giving him *no reason even to suspect* that conduct *clearly* outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction." *Id.* (emphasis added).[3]

While a technical and rational argument can be made that the Oklahoma legislature did not intend to cover attempts, Oklahoma's first-degree felony murder statute is not "narrow and precise" in the sense described above. It simply cannot be said that a potential defendant would have "no reason even to suspect" that if he kills someone while attempting to commit armed robbery, even though he escapes without the money, he may still be punished for first-degree murder. Nor can it be said that the Oklahoma court applied the statute to conduct "clearly" outside of its reach. The statutory phrase "in the commission of ... robbery" may reasonably be thought to encompass attempts. Normally, in fact, when one is "in the commission of robbery" in the plain sense of the phrase, by definition, he has not yet completed the robbery but is in the process of taking steps that if successful will result in the completed crime. Therefore, we cannot say that the language failed to put petitioner on notice of the potential consequences of his actions.

### 2. Other Factors

This does not end our inquiry, however. A judicial expansion of a statute may be unforeseeable even though the statutory language is not "narrow and precise." In *Marks*, the Supreme Court found the defendant's due process right of fair warning was violated, although the obscenity statute in question was not narrow and precise but rather broad and sweeping. There the Court determined that the statute, whose reach was necessarily confined within the constitutional limits announced by the Court, was unforeseeably broadened by a change in the Court's own jurisprudence. *Marks*, 430 U.S. at 195, 97 S.Ct. at 994.

Of course, the fair-warning concern manifest by this analysis is not based on the realities of human experience. As Justice Holmes candidly observed: "it is not likely that a criminal will carefully consider the text of the law before he murders or steals." *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931). It is even less likely that having read the text, a criminal will commence to examine prior judicial interpretations. In that regard, the fair-warning analysis remains as a matter of principle.

The more realistic concern involves the second principle underlying the Ex Post Facto clauses. Unlike criminals, courts applying the law can be expected to carefully read the text of a statute and examine preexisting law. The constitutional restrictions on *ex post facto* laws not only promote fair warning; they also " 'restrain legislatures and courts from arbitrary and vindictive action.' " *Devine*, 866 F.2d at 344 (citation omitted). The standard we emphasized in *Lopez* advances this aim and promotes "fair warning"[4] by precluding courts from retroactively applying an interpretation that is " 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct at is-

---

**3.** Naturally, whether a retroactive interpretation offends the principle of fair warning cannot be determined exclusively by reference to the face of the statute. A court must also examine the law as "expressed prior to the conduct at issue." *See Bouie*, 378 U.S. at 352, 356, 84 S.Ct. at 1703, 1704. Had Oklahoma already determined that the first-degree murder statute includes attempted robbery, there would be no fair warning defect, just as there will be no defect when Oklahoma applies this interpretation in future cases. *See id.* at 362, 84 S.Ct. at 1707 ("such a construction is of course valid for the future"). In both cases, however, the same narrow and precise language is applied to conduct apparently outside of its scope.

**4.** While it is more realistic to focus on the second principle underlying the constitutional restriction on *ex post facto* laws, tautologically, both principles "travel" together and are protected by the same standards.

sue.' " *Lopez,* 875 F.2d at 276 (quoting *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1702); *see also id.* at 277.[5]

Here, however, Oklahoma's construction of its first-degree felony murder statute·is not so "unexpected and indefensible" as to make its application violative of due process.

The court in *James* based its decisions on several grounds. First, it noted that the phrase "in the commission of" a robbery, includes acts carried out during an armed robbery, whether or not the crime was successfully executed. The court reasoned, for example, that earlier in *Howington v. State,* 35 Okl.Cr. 352, 250 P. 941 (1926), it had determined that murder committed "in the perpetration of" an armed robbery also included murders committed in an attempt to perpetrate a robbery.[6]

Second, the court noted that in the statutory provision defining the underlying crime of armed robbery, both attempts and the completed crime are included and treated equally. *See James,* 637 P.2d at 865 (citing 21 Okla.Stat. § 801); *see also Hutton v. State,* 91 Okl.Cr. 35, 215 P.2d 586, 587 (1950) ("An attempt to rob is just as grave an offense as the actual robbery."); *Williams v. State,* 542 P.2d 554, 586 (Okla. Crim.App.1975) ("Prior to *Furman,* [v. *Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ], simple armed robbery, as well as the attempt to commit the same, was punishable by death or imprisonment at the discretion of the jury ... irrespective of whether homicide resulted in the commission thereof.").

Third, and similarly, the court in essence found that it would simply be irrational to distinguish between homicides committed during ·the course of an armed robbery, where the robber gets the money, and those where the robber does not get the money. The purpose of the felony-murder rule was to prevent certain felonies to begin with, as well as homicide, where homicide is most likely to occur. *James,* 637 P.2d at 865; *Williams,* 542 P.2d at 586 (interpreting 1973 first-degree "felony murder" provision). The court reasoned: "The likelihood of a homicide is not lessened by the fact that the perpetrator of the robbery ran without the money or goods or that the perpetrator committed the crime only to discover that the anticipated money or goods did not exist or was not in the possession of the victim." *James,* 637 P.2d at 865.

In spite of this, petitioner argues that other factors did render the *James* decision unforeseeable. First, he argues that the statute's language and history called for the opposite interpretation. By 1981, Oklahoma had enacted at least three different felony-murder statutes. One statute, enacted in 1910, stated that homicide is murder "[w]hen perpetrated without any design to effect death by a person engaged in the commission of a felony." R.L. 1910, § 2313. In 1973, this statute was repealed and replaced by·a more narrowly drawn statute that made homicide into first-degree murder, when it was perpetrated "with a premeditated design to effect the death·of the person killed" and:

> [w]hen perpetrated by one committing or *attempting to commit* rape,·kidnapping for the purpose of extortion, arson in the first-degree, armed robbery or when death occurs following the sexual molestation of a child under the age of sixteen (16) years....

---

5. In *Lopez,* we stated the issue is "whether the state court construction ... was so 'unexpected' under preexisting law as to prevent its application retroactively." 875 F.2d at 277. While this statement is somewhat circular in that it does not explain *how* "unexpected" the construction must be before a due process violation occurs, other phrases such as *"indefensible* by reference to the law which has been expressed," *id.* at 276 (quoting *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1702), and "[without] the slightest support in prior ... decisions," *Bouie,* 378 U.S. at 356, 84 S.Ct. at 1704, adequately capture the nature of the required showing.

6. Petitioner argues that the *Howington* case cannot reasonably be used to support the court's decision in *James* because the statute in question encompassed murders committed during *any* felony, and attempted robbery is a felony. While this observation about the statute is true, that was not the basis for the court's decision in *Howington.* There, the court held that while the information alleged in substance that defendant "in an attempt to perpetrate a robbery, killed and murdered [the victim]," the court held that the "information properly charges the crime of murder *committed in perpetration of a robbery." Howington,* 250 P. at 942 (emphasis added).

21 Okla.Stat. § 701.1(2) (1973) (emphasis added). This provision was not a felony-murder provision, in at least the traditional sense, because it required a showing of premeditation—a showing that the felony-murder rule was designed to avoid. Rather, the provision was one of several that listed the aggravating circumstances which justified the imposition of capital punishment. *See* Comment, *Criminal Law: Felony Murder Under the New Murder Statutes,* 29 Okla.L.Rev. 445 (1976). The traditional felony-murder rule found in the 1910 statute was revised and codified under the second-degree murder statute that included homicide: "[w]hen perpetrated without any design to effect death by a person engaged in the commission of any felony other than the felonious acts set out [under the first-degree statute]." 21 Okla.Stat. § 701.2(3) (1973). This scheme created a gap; no section covered *unpremeditated* felony murders based on acts set out in the first-degree murder statute. *See Campbell v. State,* 546 P.2d 276, 283–84 (Okla. Crim.App.1976).

In 1976, the 1973 provisions were replaced by the provisions in force when petitioner committed the crime. The new first-degree murder provision added a felony-murder rule based on more serious offenses and removed the element of premeditated design. However, unlike the previous first-degree murder provision, the new version did not explicitly refer to "attempts." The inference that may reasonably be drawn is that since "attempts" were not explicitly mentioned under the first-degree murder provision, the legislature must have intended to relegate them to the "catch-all" second-degree murder statute.[7]

While persuasive, the argument does not render the Oklahoma court's interpretation "indefensible." If under Oklahoma law the phrase "in the commission of" means the same thing as "committing or attempting to commit," and if this is what the Oklahoma legislature intended—two propositions for which *James* offers support—then there was no need to explicitly mention attempts.[8]

Second, petitioner argues that the *James* court's refusal to follow certain rules of statutory construction was unforeseeable. In essence, petitioner argues that the *ex-*

7. As petitioner noted, it was for this reason that the Oklahoma Commission on Uniform Jury Instructions–Criminal concluded that the first-degree provision did *not* as written include attempts. *See Oklahoma Uniform Jury Instructions–Criminal* at 76–77 (November 10, 1981).

8. It is common, for the sake of precision, to use the phrase "in the commission or attempt to commit," even when the underlying offenses include all felonies and by implication attempts. *See, e.g.,* Wayne R. LaFave & Austin W. Scott, Jr., Handbook on Criminal Law § 71 (West 1972) ("At the early common law one whose conduct brought about an unintended death in the commission or attempted commission of a felony was guilty of murder."). Oklahoma's early felony-murder statute did not adopt that convention. With the exception of the 1973 first-degree "felony-murder" provision, neither did any other version of the felony-murder rule.

As mentioned earlier, it is not unreasonable to say that the phrase "in the commission of" includes "committing or attempting to commit." As the Oklahoma Commission on Uniform Jury Instructions–Criminal observed: "It must be noted that the guidance afforded by Oklahoma case law regarding the scope of criminal conduct included within the purview of 'in the commission of' indicates a broad reading of this language." *See Oklahoma Uniform Jury Instructions–Criminal* at 76. The phrase had already been interpreted even to include deaths caused after the underlying felony had been completed. *See Id.* Interestingly, Oklahoma's interpretation of the phrase "in the commission of" is very similar to Pennsylvania's statutory definition of the phrase "in the perpetration of." While Pennsylvania's felony-murder rule applies to murder "committed while defendant was engaged ... in the perpetration of a felony," the statute defines "perpetration of a felony" to mean the act of engaging "in the commission of, or attempt to commit, or flight after committing or attempting [enumerated felonies]." 18 Pa. Cons.Stat. § 2502 (1991).

The simplest explanation for the statutory changes of Oklahoma's long-standing felony-murder rule in 1973 and 1976, is not that Oklahoma intended to distinguish between attempts and completed crimes. Our research has yielded no example of a felony-murder rule that makes such a distinction. Instead, Oklahoma adopted a common distinction between felonies that are inherently dangerous and those that are not and chose to limit the first-degree murder statute to the former. *See Oklahoma Uniform Jury Instructions–Criminal* 76 (November 10, 1981) ("The statute confines murder in the first-degree to killings perpetrated during the course

*pressio unius* maxim, the plain-meaning rule, and the rule that criminal statutes should be strictly construed all operate against the interpretation in *James*. Supplemental Brief of Petitioner–Appellant at 25–26 (citations omitted). All of these arguments, however, assume that as plainly written the statute does not include attempts, but as previously discussed that assumption is not clearly correct. On the other hand, these rules of construction do compete with those aspects of the *James* decision that appear to rest on policy grounds alone.

Finally, petitioner argues that the *James* decision was unforeseeable in light of the felony murder statutes of other states. In a carefully researched and reasoned brief, petitioner observes that "every other state in the nation that had a felony murder statute which was limited to certain crimes *explicitly* dealt with attempts, as did the Oklahoma felony murder statute adopted in 1973." Supplemental Brief of Petitioner–Appellant at 26. Petitioner cites the statutes of 42 states and the District of Columbia to support this proposition. *Id.* at 26 n. 16.

This observation cuts both ways. We have examined all 43 statutes, and confirm that attempts are explicitly mentioned.

However, we also observed that not a single felony-murder statute discriminated between the underlying attempted crime and the completed crime or punished them differently. In fact, if *James* had reached the opposite conclusion, Oklahoma would have been the only state in the nation that punished differently felony-murder based on attempted robbery and felony-murder based on a completed robbery.[9] This fact supports the *James* court's determination that it is irrational to distinguish between the attempted and completed underlying crime.

In any case, our task is not to rewrite or vigorously defend the *James* decision. Nor are we required to conclude that the *James* decision was "correct." The question is simply whether that decision was unforeseeable under the standards we have pronounced. While the factors mentioned by petitioner may have allowed the Oklahoma court to rationally reach the opposite conclusion, they do not make the *James* interpretation "unexpected and indefensible" and therefore unforeseeable.[10] The *James* decision reasonably interpreted the statutory language; there was support in prior interpretive case law; Oklahoma had historically not discriminated between attempted robbery and completed robbery,

---

of the traditional 'inherently dangerous' felonies, forcible rape, robbery with a dangerous weapon, first-degree arson and first-degree burglary, as well as to slayings performed during a kidnapping or escape from lawful custody.") (citation omitted); 40 Am.Jur.2d *Homicide* § 72 ("In practically all jurisdictions are found statutes providing that a homicide perpetrated during the commission, or attempted commission, of any felony, or more frequently, of certain specified felonies such as arson, burglary, kidnapping, mayhem, rape, robbery, sodomy, or the like, shall be deemed murder or murder in the first degree."); LaFave & Scott, *supra*, at § 71 ("In many states, the felony-murder rule has been limited in scope by a requirement that the felony attempted or committed by the defendant must be dangerous to life."). The 1973 provisions, inchoately implemented this distinction but failed to include within the statutory scheme felony-murder based on the serious offenses. The 1976 provisions completed this task.

9. Petitioner also asserts that three other states— Georgia, Iowa, and Pennsylvania—had in 1981 a statute resembling Oklahoma's 1910 statute and

that three states—Kentucky, Massachusetts, and South Carolina—depended on the common law felony-murder rule. None of these states distinguishes between the attempted and completed underlying felonies. One state, Hawaii, did not recognize felony murder as a separate crime. *See* Supplemental Brief of Petitioner–Appellant at 27 n. 17–18; *but cf.* Mass.Ann.Laws ch. 265, § 1 (1991) (statutory felony-murder rule); 18 Pa.Cons.Stat. § 2502 (1991) (statutory felony-murder rule limited to certain felonies).

10. If an "unforeseeable" interpretation is simply one over which reasonable minds can disagree, then the decision of Oklahoma's Commission on Uniform Jury Instructions would have provided enough evidence to compel the conclusion that the *James* decision was unconstitutionally applied. *Cf. Helton v. Fauver*, 930 F.2d 1040, 1047 n. 10 (3d Cir.1991) (over vigorous dissent, and without the support of the other judge joining in the majority, one judge suggests that definition of "new" rule offered in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)—that a new rule is one over which reasonable minds could differ as to whether it was clearly commanded by existing law—might usefully inform the foreseeability standard). That,

either under its felony-murder statutes or in the underlying statute making them a offense; and there is no example, either in the common law, *see* note 8, *supra,* or any present state law, that treats differently attempted and completed felonies for purposes of a felony-murder rule. *Compare with Bouie,* 378 U.S. at 356, 84 S.Ct. at 1704 (state's interpretation was "clearly at variance with the statutory language" and without "the slightest support in prior ... decisions"); *Marks, supra* (court unexpectedly overturned its own prior case); *Devine,* 866 F.2d at 346 (state court used "obscure legal techniques" to reach its desired result). Therefore, we cannot find that Oklahoma's application of the *James* decision to petitioner's case violated petitioner's due process rights.

### B. Failure to Instruct Jury

■ Petitioner's second ground for relief is that the trial court violated his due process rights by failing to instruct the jury on all the elements of first-degree murder.[11] *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Specifically, petitioner asserts that the court failed to instruct the jury on all the elements of the underlying felony of attempted robbery in that it did not instruct the jury on the third element of attempted robbery: failure to consummate the crime. Supplemental Brief of Petitioner–Appellant at 32.

This failure did not violate petitioner's due process rights. Petitioner was charged and convicted of first-degree murder. To meet its burden, the state needed to prove that petitioner committed the murder while "in the commission" of armed robbery. As Oklahoma has interpreted this statute, petitioner committed the murder while "in the commission" of armed robbery if he caused the death while attempting to commit armed robbery, regardless of whether or not he succeeded. *James,* 637 P.2d at 864–65. Under this interpretation, to make the required showing, it is simply immaterial whether defendant consummated the robbery or not. It necessarily follows that to convict petitioner, the jury likewise was not required to find that petitioner either succeeded in robbing the victim or failed to do so, and therefore, no instruction on that point was necessary.

Accordingly, the district courts judgment is AFFIRMED.

---

however, is not the standard our precedent advances. Interestingly, while the Oklahoma Commission did adopt the opposite conclusion, it did in fact foresee the interpretation adopted in *James* and considered it plausible enough to label the issue a "perplexing question of first impression." *Oklahoma Uniform Jury Instructions–Criminal* at 76–77 (November 10, 1981). *Cf. Welton v. Nix,* 719 F.2d 969, 970 (8th Cir. 1983) ("Our task is only to decide whether the [state court's] interpretation of [its] own law is so unexpected, so outlandish, that no reasonable person could have expected it." (citing *Bouie* )); *accord McSherry v. Block,* 880 F.2d 1049, 1053 (9th Cir.1989).

11. There is some doubt as to whether or not petitioner presented this argument to the district court. Petitioner proceeded *pro se* at that stage, and understandably his pleadings are not entirely clear. Given the unnecessary expense and delay to all parties that a refusal to dispose of the issue may provoke, we will treat the issue as if it had been raised at the district court level.