**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT SIMPSON EVANS, JR.,

      Petitioner - Appellant,

v.

CHARLES RAY, Warden of the Davis
Correctional Center,

      Respondent - Appellee.

No. 03-6012

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-02-501-M)**

---

Steven Michael Presson (Robert W. Jackson with him on the briefs), Jackson &
Presson, P.C., Norman, Oklahoma, for Petitioner-Appellant.

William R. Holmes, Assistant Attorney General of Oklahoma (W.A. Drew
Edmondson, Attorney General of Oklahoma, with him on the brief), Oklahoma
City, Oklahoma, for Respondent-Appellee.

---

Before **EBEL, HOLLOWAY,** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      Robert Simpson Evans, Jr. ("Petitioner") was convicted and sentenced to

life imprisonment for first degree child abuse murder. On direct appeal to the

state court, Petitioner argued that the retroactive application of <u>Fairchild v. State</u>, 998 P.2d 611 (Okla. Crim. App. 1999), which he contends changed the mens rea element of Oklahoma's child abuse murder statute from specific to general intent, violates ex post facto principles as incorporated in the Due Process Clause of the Fourteenth Amendment. The state court disagreed and affirmed his conviction. Petitioner now makes the same argument on federal habeas review. Because we conclude that the state court reasonably applied the Supreme Court's precedent on ex post facto principles regarding judicial rules, we AFFIRM.

## BACKGROUND

On November 9, 2000, Petitioner was found guilty of first degree child abuse murder under Okla. Stat. tit. 21, § 701.7(C),[1] and was sentenced to life in prison. The conviction arose out of the death of Petitioner's two-year-old stepson, Daquinlan McKnight, on November 22, 1996, as a result of complications from burns suffered by the child on November 12, 1996. The jury instructions required only general intent, allowing the jury to convict Petitioner if

---

[1]Under the relevant portion of this statute, "[a] person commits murder in the first degree when the death of a child results from the willful or malicious injuring, torturing, maiming or using of unreasonable force by said person . . . upon the child." Okla. Stat. tit. 21, § 701.7(C). The mens rea for this crime is met if the person "either willfully tortured or used unreasonable force upon the child or maliciously injured or maimed the child." <u>Id.</u>

it found that he had acted with the desire to "vex, annoy or injure" the child, even if he did so without "any intent to violate the law."[2]

On direct appeal to the Oklahoma Court of Criminal Appeals (OCCA), Petitioner argued that the law at the time of his actions in 1996 clearly required specific, not general, intent. Although the OCCA in 1999 construed the child abuse murder statute to require only general intent in Fairchild, 998 P.2d at 622-23, Petitioner insisted that the retroactive application of that decision to his particular case violated ex post facto principles. The OCCA disagreed and affirmed his conviction.

On April 17, 2002, Petitioner filed a petition for habeas corpus in the Western District of Oklahoma, making the same ex post facto argument that he had made before the state appellate court. On December 30, 2002, the district court denied habeas relief.

Petitioner filed a timely notice of appeal and application for certificate of appealability (COA). On July 22, 2003, we granted COA and directed the parties to address Petitioner's ex post facto argument on appeal.

---

[2]Petitioner does not challenge the language of this instruction if Okla. Stat. tit. 21, § 701.7(C) can be satisfied by general intent. His sole challenge is that the Oklahoma Court of Criminal Appeals violated ex post facto principles expressed in the Due Process Clause when it concluded after his acts took place that the statute was a general intent statute.

## DISCUSSION

### I. Jurisdiction

Although Petitioner claims to bring this action under both 28 U.S.C. § 2241 and § 2254, we construe his petition as one under § 2254 because he is challenging the fact of his conviction rather than the execution of his sentence. See Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000). We review the district court's denial of a § 2254 habeas petition under 28 U.S.C. § 2253.

### II. Standard of Review

A petition for habeas corpus brought under § 2254(d) will only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has clarified that a state court determination is contrary to clearly established Supreme Court precedent where "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result

different from" the result reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); see also Cannon v. Gibson, 259 F.3d 1253, 1260 (10th Cir. 2001), cert. denied, 535 U.S. 1080 (2002) (same).

In examining whether the state court's decision involved an unreasonable application of clearly established federal law as determined by the Supreme Court, it is not enough that the state court applied clearly established federal law erroneously or incorrectly. Rather, the application must be unreasonable. Mitchell v. Gibson, 262 F.3d 1036, 1045 (10th Cir. 2001) ("The Supreme Court has cautioned 'that an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law.'") (quoting Williams, 529 U.S. at 412).

We review the district court's factual findings for clear error and its legal basis for dismissal of a habeas petition *de novo*. Fisher v. Gibson, 262 F.3d 1135, 1142 (10th Cir. 2001), cert. denied, 535 U.S. 1034 (2002).

## III.   Analysis

### A.   Ex post facto principles as implicated in the retroactive application of judicial decisions

Article I, § 10 of the U.S. Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art I, § 10, cl. 1. To fall within the Ex Post Facto Clause, "a law must be retrospective – that is, 'it must apply to

events occurring before its enactment' – and it 'must disadvantage the offender affected by it.'" Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)). The Supreme Court long ago described categories of laws that were prohibited by the Ex Post Facto Clause, including laws that criminalize innocent action taken before the passage of the law, as well as laws that inflict a greater punishment than was provided for when the crime was committed. Calder v. Bull, 3 U.S. (3 Dall.) 386, 388-90 (1798). "'The purposes behind the prohibition on *ex post facto* laws are twofold: to restrain legislatures and courts from arbitrary and vindictive action and to prevent prosecution and punishment without fair warning.'" Devine v. New Mexico Dep't of Corrections, 866 F.2d 339, 344 (10th Cir. 1989) (quoting Rubino v. Lynaugh, 845 F.2d 1266, 1272 (5th Cir. 1988)).

"The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." Marks v. United States, 430 U.S. 188, 191 (1977) (citation omitted); see also Rogers v. Tennessee, 532 U.S. 451, 460 (2001) ("The *Ex Post Facto* Clause, by its own terms, does not apply to courts."). However, the rationale of providing fair warning to criminal defendants is inherent in the notion of due process. Bouie v. City of Columbia, 378 U.S. 347, 354-55 (1964).

Although ex post facto principles are thus relevant to the retroactive application of judicial decisions through the due process clause of either the Fifth or the Fourteenth Amendment, the Ex Post Facto Clause is not incorporated wholesale or "jot-for-jot." Rogers, 532 U.S. at 459. "Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text" and "would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other." Id. at 460. The Court explained that a court's "'opportunity for discrimination'" is more limited than a legislature's. Id. at 460-61 (quoting James v. United States, 366 U.S. 213, 247 n.3 (1961) (Harlan, J., concurring in part and dissenting in part)).

Therefore, the prohibition of the ex post facto application of judicial decisions is less extensive than the prohibition of ex post facto statutes. See Wayne R. LaFave, Substantive Criminal Law § 2.4(c) (2d ed. 2003). The Rogers Court distilled the ex post facto test for judicial opinions into the following: "[D]ue process limitations on the retroactive application of judicial interpretations of criminal statutes" only apply to those decisions "that are 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" 532 U.S. at 461 (quoting Bouie, 378 U.S. at 354). For example, in Rogers, the Tennessee supreme court had abolished the common law

doctrine requiring a murder victim to have died within one year and a day after the defendant's actions before the defendant could be convicted of murder. The Supreme Court held that the retroactive application of the judicial abolition of the "year and a day" rule did not violate due process because the rule itself was not well-established prior to the judicial decision, and thus the abolition of this "common law relic" was not unexpected or indefensible. Rogers, 532 U.S. at 462-64.

In Bouie, the South Carolina supreme court had construed a trespassing statute to include remaining on the premises after having been asked to leave, even though the "narrow and precise" language of the trespass statute only prohibited "entry" after notice. 378 U.S. at 349, 351-52. Because such narrow and precise language "lulls the potential defendant into a false sense of security, giving him no reason even to suspect that conduct clearly outside the scope of the statute as written will be retroactively brought within it by an act of judicial construction," the Supreme Court held that judicial expansion beyond the plain language violated due process principles of fair warning when retroactively applied. Id. at 352-55, 363; see also Marks, 430 U.S. at 196 (holding that although statutory language was not narrow or precise, judicial creation of new standards governing obscenity was unexpected and violated the fair warning principle of due process when applied retroactively).

The Tenth Circuit has provided guidance[3] in applying the ex post facto principles of Marks, Bouie, and Rogers by formulating a two-pronged inquiry. First, we discern whether the statute is "narrow and precise" on its face. Hawkins v. Mullin, 291 F.3d 658, 665 (10th Cir. 2002), cert. denied, 537 U.S. 1173 (2003) (citing McDonald v. Champion, 962 F.2d 1455, 1458-59 (10th Cir. 1992) (quotation omitted)). If so, "any judicial expansion of that statute beyond its own terms will be considered unforeseeable." Id. (quotation omitted). Second, if the statute is not so clearly drawn on its face, we ask "'whether the [state court's] construction is so unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue as to prevent its application retroactively.'" Id. at 666 (quoting McDonald, 962 F.2d at 1458) (alteration in original).

With these ex post facto principles in mind, we turn now to Petitioner's argument against retroactively applying the Fairchild court's construction of the child abuse murder statute as requiring only general intent.

---

[3]Because we are reviewing a § 2254 habeas petition, we are only bound to investigate federal law as expressed by the Supreme Court and ascertain whether such law was reasonably applied by the state court. See 28 U.S.C. § 2254 (d)(1). However, in reviewing habeas petitions, we often look for guidance in the Tenth Circuit's interpretation of Supreme Court cases. See e.g., Hawkins v. Mullin, 291 F.3d 658, 665 (10th Cir. 2002).

**B.    The <u>Fairchild</u> decision was not unexpected and indefensible against the backdrop of prior Oklahoma law regarding the mens rea required by the child abuse murder statute.**

Petitioner argues that Oklahoma law at the time of his actions in 1996 clearly required specific intent for a conviction under the child abuse murder statute. Therefore, he contends, when the OCCA later construed the statute to require only general intent in <u>Fairchild</u>, 998 P.2d at 622-23, this was an unexpected and indefensible change in the law. He argues that requiring only a general intent mens rea in his particular case violated ex post facto principles as incorporated by the Due Process Clause of the Fourteenth Amendment. As described below, we disagree with Petitioner's argument and AFFIRM the district court's denial of habeas. The state appellate court correctly found that the <u>Fairchild</u> case was not unexpected and indefensible, and even if the court had erred, its application of Supreme Court case law in this analysis was not unreasonable. See <u>Williams</u>, 529 U.S. at 410-11.

Petitioner was convicted under Okla. Stat. tit. 21, § 701.7(C), which makes child abuse murder a crime of murder in the first degree. The statute provides:

> A person commits murder in the first degree when the death of a child results from the willful or malicious injuring, torturing, maiming or using of unreasonable force by said person or who shall willfully cause, procure or permit any of said acts to be done upon the child pursuant to Section 7115 of Title 10 of the Oklahoma Statutes. It is sufficient for the crime of murder in the first degree that the person either willfully tortured or used unreasonable force upon the child or maliciously injured or maimed the child.

- 10 -

Okla. Stat. tit. 21, § 701.7(C).  This language is not "narrow and precise" with regard to whether the required mens rea is one of general or specific intent.  The mens rea elements of criminal statutes are rarely clear from the statutory language itself.  LaFave, Substantive Criminal Law § 5.1(b) (describing ambiguity of the terms "wilfully" and "maliciously").  In fact, it would be reasonable to read this particular statute as requiring only general intent.  As the Fairchild court explained, the mens rea of "willful or malicious," which is required by the plain language of § 701.7(c), normally does *not* indicate a crime of specific intent.  Fairchild, 998 P.2d at 620 (citing as examples arson, assault, and aggravated assault and battery, among other things).

Because the statute is not narrow and precise on the mens rea element, we next examine whether the Fairchild decision was "unexpected and indefensible" by reference to prior Oklahoma law.  See Hawkins, 291 F.3d at 666 (citing Rogers, 532 U.S. at 461) (quotations omitted).  Petitioner cites several cases for the proposition that Oklahoma law prior to his actions in November 1996 clearly required specific intent.  However, as the Fairchild court itself correctly recognized, only one of these cases, Hockersmith v. State, 926 P.2d 793, 795 (Okla. Crim. App. 1996), actually used the term "specific intent" and it did so only in one sentence and with no discussion of existing Oklahoma law to the contrary.  Fairchild, 998 P.2d at 621-22.  All of the other cases required only

- 11 -

"intent to injure," and the Fairchild court explained that this "intent" merely meant the intent encompassed by the term "willful," and did not require specific intent. Id. at 622 (citing Grady v. State, 947 P.2d 1069 (Okla. Crim. App. 1997), Bannister v. State, 930 P.2d 1176, 1178 (Okla. Crim. App. 1996), Revilla v. State, 877 P.2d 1143, 1148, 1152 (Okla. Crim. App. 1994), and Watkins v. State, 744 P.2d 967, 970 (Okla. Crim. App. 1987)).

Additionally, the Fairchild court pointed out that an earlier case, Workman v. State, 824 P.2d 378, 383 (Okla. Crim. App. 1992), held that the intent for first degree child abuse murder was "general intent." Fairchild, 998 P.2d at 618-19. Because Hockersmith did not overrule Workman, the state of the law at the time prior to Petitioner's actions in 1996 was confusing and unclear with regard to the mens rea element of this statute. The OCCA viewed its Fairchild opinion as simply "clarifying" the correct rule, consistent with a long string of earlier Oklahoma cases interpreting the "willful" requirement as a requirement of general intent rather than specific intent, id. at 620-22, and overturning the "aberration" that was Hockersmith. Id. at 619, 622.[4]

---

[4]As the magistrate judge pointed out below, even the Oklahoma Uniform Jury Instructions, which were adopted by the OCCA prior to this offense, approved an instruction for child abuse murder that followed the language of a general intent statute rather than a specific intent statute. See Oklahoma Uniform Jury Instructions - Criminal, 2d 4-65A, at 156A (Apr. 4, 1996).

There were thus two conflicting, valid cases on the books at the time of Petitioner's actions in 1996 – one that required only general intent (<u>Workman</u>) and one that required specific intent (<u>Hockersmith</u>).  There were also several cases that used the phrase "intent to injure," without discussion of either specific or general intent (<u>Grady</u>, <u>Bannister</u>, <u>Revilla</u>, and <u>Watkins</u>).

This confusion is similar to the situation we faced in <u>Sallahdin v. Gibson</u>, 275 F.3d 1211 (10th Cir. 2002), in which the petitioner launched an ex post facto attack on a new judicial decision that attempted to reconcile earlier confusion in the law.  <u>Id.</u> at 1228-29.  In <u>Sallahdin</u>, we held that the later judicial decision was "foreseeable and defensible" because it was simply attempting to reconcile its earlier "diametric opposing lines of caselaw authority" on the issue.  <u>Id.</u> (citation and quotation omitted).  Therefore, the retroactive application of the new decision did not violate ex post facto principles.  <u>Id.</u>  Similarly, we do not find the <u>Fairchild</u> decision to be unexpected and indefensible.[5]

In sum, <u>Fairchild</u> was not unexpected and indefensible in light of the plain language of the statute and Oklahoma case law in force as of the time the crime was committed.  To the contrary, an opinion resolving the conflict between

---

[5]At oral argument, Petitioner insisted that <u>Fairchild</u> was "indefensible" because its interpretation of the statute constituted bad policy.  However, because our responsibility is not to second-guess state policy decisions, but only to ascertain whether defendants would have had fair warning of the judicial ruling, we reject this argument.

Workman and Hockersmith was eminently predictable. That the Fairchild court chose to go with Workman was certainly defensible in light of the statutory language of Okla. Stat. tit. 21, § 701.7(C) and Oklahoma's long history of interpreting the statutory requirement of "willful" as a general intent requirement rather than as a specific intent requirement. So, Fairchild was neither unexpected nor indefensible, let alone unexpected and indefensible. The OCCA correctly identified the controlling Supreme Court precedent of Rogers and we cannot say that OCCA's application of the Rogers principles was unreasonable, even if that application was wrong. See Williams, 529 U.S. at 412. Accordingly, we AFFIRM the district court's refusal to grant habeas under § 2254.