**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DENNIS S. HERULA,

      Defendant - Appellant.

Nos. 05-1091 & 05-1109

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 02-CR-485-RB)**

---

H. Michael Steinberg, Englewood, Colorado, for Defendant - Appellant.

Jerry N. Jones, Assistant United States Attorney (William J. Leone, United States Attorney, and Andrew A. Vogt, Assistant United States Attorney, on the briefs), Denver, Colorado, for Plaintiff - Appellee.

---

Before **HARTZ, HOLLOWAY** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

    Dennis S. Herula pled guilty pursuant to a plea agreement to seven counts of wire fraud in the United States District Court for the District of Colorado, as well as two counts of fraud (wire fraud and bankruptcy fraud) and one count of

money laundering arising out of a federal case in the District of Rhode Island, which had been transferred to the District of Colorado. The district court conducted a consolidated sentencing and sentenced Herula to 188 months imprisonment in both cases, to be served concurrently. Herula appeals from his sentence, arguing it is unreasonable under *United States v. Booker*, 543 U.S. 220 (2005). We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and AFFIRM.

## I. Background

On August 25, 2004, Herula was indicted in the District of Colorado for, *inter alia*, seven counts of wire fraud in violation of 18 U.S.C. § 1343 (Case No. 02-CR-485). On October 22, 2004, charges in a separate District of Rhode Island information were transferred to the District of Colorado for plea and sentencing pursuant to Rule 20(a) of Federal Rules Criminal Procedure.[1] The Rhode Island

---

[1] Rule 20(a) provides:

**(a) Consent to Transfer.**
A prosecution may be transferred from the district where the indictment or information is pending . . . to the district where the defendant is arrested, held, or present if:

> (1) the defendant states in writing a wish to plead guilty or nolo contendere and to waive trial in the district where the indictment or information is pending, consents in writing to the court's disposing of the case in the transferee district, and files the statement in the transferee district; and

> (2) the United States attorneys in both districts approve the transfer in writing.

case involved two counts of fraud — wire fraud and bankruptcy fraud — and one count of money laundering, in violation of 18 U.S.C. §§ 1343, 152(1) and 1956(a)(1)(B)(I), respectively. The case was assigned to the same district judge and docketed as Case No. 04-CR-449. The cases were never formally consolidated.

On October 26, 2004, Herula pled guilty pursuant to a plea agreement to the seven counts of wire fraud in the Colorado indictment. In the plea agreement, the government and Herula "agree[d] and stipulate[d] that the guidelines calculation set forth below [is] applicable in this case, that the parties will recommend that [the guidelines] be applied as set forth below, and that neither party will seek a departure." (05-1091 R. Vol. I, Doc. 172 at 2.) The calculation in the plea agreement set Herula's total offense level at 31 and his criminal history category at III, resulting in an estimated guideline range of 135 to 168 months imprisonment. The government also agreed to recommend that Herula be "sentenced . . . at the bottom of the applicable guideline range as determined by the Court," dismiss the remaining Colorado counts, and not oppose Herula's request to be sentenced concurrently with any sentence he received in the Rhode Island case. (*Id*. at 2.) The plea agreement specifically noted, however, that "the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position or recommendation of the parties." (*Id*. at 14.) *See* FED. R. CRIM. P. 11(c)(1)(B)

(plea agreement provision recommending "that a particular sentence or sentencing range is appropriate[,] . . . does not bind the court").

On November 4, 2004, Herula pled guilty pursuant to a plea agreement to all three counts of the Rhode Island information. The Rhode Island plea agreement was substantially the same as the Colorado agreement. It calculated Herula's combined total offense level for all counts as 31, but his criminal history category as only a II. Based on the "estimated offense level(s)" and the "(tentative) criminal history category," the resulting guideline range was 121 to 151 months imprisonment. (05-1109 R. Vol. I, Doc. 3 at 20.) The plea agreement also committed the government to recommend a sentence of 121 months and not to oppose a request by Herula that his sentence run concurrently with the sentence he received in the Colorado case. Both sentences were set to be entered the same day.

A presentence investigation report (PSR) was prepared addressing both cases.[2] It grouped Herula's three Rhode Island counts with the seven Colorado counts as "multiple counts" pursuant to Application Note 1 of USSG §5G1.2 and the grouping rules in Chapter 3, Part D. This resulted in a total offense level of

---

[2] The 2002 edition of the Sentencing Guidelines were used at Herula's sentencing. In his reply brief, Herula argues different versions of the guidelines should have been applied, *i.e.*, the 2001 guidelines to the Colorado wire fraud counts and the 2000 guidelines to the Rhode Island money laundering count. However, this argument was not raised below and was waived during oral argument.

35 after a three point reduction for acceptance of responsibility, compared with an offensive level of 31 under the separate plea agreements.[3] In light of Herula's criminal history category of II, the PSR recommended a guideline range of 188 to 235 months imprisonment. Herula objected to the grouping of counts from both cases, arguing the cases were not consolidated for sentencing purposes thus rendering §5G1.2 inapplicable. He also argued application of §5G1.2 was unfair because neither party anticipated it.

After listening to argument, the district court adopted the recommendation of the PSR and sentenced Herula to 188 months imprisonment in each case, to run concurrently. The district court stated its "sentence would be the same, if not greater, under its independent analysis under 18 U.S.C. [§] 3553(a)." (05-1091 R. Vol. III at 29.) On February 11, 2005, judgment was entered in both cases and

---

[3] The four level difference between the Colorado plea agreement estimate and the PSR calculation was due to the inclusion of a two level upward adjustment for Herula occupying an aggravating role pursuant to §3B1.1(c) and an additional two point upward adjustment based on Herula's abuse of a position of trust pursuant to §3B1.3. Both of these adjustments were based on conduct arising from the Rhode Island money laundering counts. Unfortunately, the four level difference between the Rhode Island plea agreement estimate, which included the aggravating role and abuse of position adjustments, and the PSR defies similar comparison. Simply put, the Rhode Island plea agreement's estimate arose from the money laundering count, which had an adjusted offense level of 34, the highest of the three counts. With the acceptance of responsibility adjustment, the combined total offense level was 31. However, when the PSR grouped the Rhode Island and Colorado counts, the fraud counts had a higher offense level than the money laundering count. Thus, under the guidelines' grouping rules, the higher offense level was used. This higher offense level was largely due to the additional $64,850,000 in loss from the Colorado fraud counts.

Herula filed a notice of appeal in both cases on February 17. On July 6, 2005, we ordered the appeals consolidated on Herula's motion.

## II. Discussion

Herula challenges the reasonableness of his sentence, arguing the district court erred by computing a consolidated sentencing guideline range and the sentence imposed was unreasonable because it was in excess of the range contemplated in the plea agreements. He also argues the advisory application of the guidelines after *Booker,* in a case premised on guilty pleas entered before *Booker*, violates the Ex Post Facto Clause of the United States Constitution.

A.    Reasonableness of Sentence

After *Booker*, "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before. The only difference is that the court has latitude . . . to depart from the resulting Guideline ranges." *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir.) (citation omitted), *cert. denied*, 126 S.Ct. 486 (2005). *See United States v. Resendiz-Patino*, 420 F.3d 1177, 1184 n.6 (10th Cir. 2005) ("Relieved of the mandatory application of the guidelines by *Booker*, district courts are now permitted to give more sway in sentencing to the factors enumerated in 18 U.S.C. § 3553(a)."), *cert. denied*, 126 S.Ct. 1098 (2006). Thus, "notwithstanding *Booker's* invalidation of the mandatory nature of the sentencing guidelines, 'district courts must still consult the Guidelines and take them into

account when sentencing.'" *United States v. Clark*, 415 F.3d 1234, 1246 (10th Cir. 2005) (O'Brien, J., dissenting) (citation omitted, quoting *United States v. Doe*, 398 F.3d 1254, 1257 n.5 (10th Cir. 2005)). In *United States v. Kristl*, we fashioned a two-step approach for post-*Booker* appellate review of sentences imposed within the applicable guideline range. 437 F.3d 1050, 1055 (10th Cir. 2006). First, we determine whether the district court correctly calculated the applicable guideline range. *Id*. at 1054-55. If so, the sentence "is presumptively reasonable" subject to rebuttal by the defendant "in light of the other sentencing factors laid out in § 3553(a)." *Id*. at 1055. We still review legal questions de novo, factual findings for clear error, and give due deference to the district court's application of the guidelines to the facts. *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006).

Herula challenges the district court's calculation of the applicable guideline range. Specifically, he challenges whether the Colorado and Rhode Island counts constitute "multiple counts" for purposes of USSG §5G1.2. His main argument is that the Colorado and Rhode Island cases were never consolidated and thus the Colorado and Rhode Island cases should have been treated separately for sentencing purposes.

Application Note 1 to USSG §5G1.2 states in relevant part:

This section applies to multiple counts of conviction (1) contained in the same indictment or information, or (2) contained in different indictments or informations for which sentences are to be imposed at

the same time or in a consolidated proceeding.

In this case, the district court found Herula's Colorado and Rhode Island counts met the terms of Application Note 1, and grouped all counts under Chapter 3, Part D's grouping rules.

Application Note 1 to §5G1.2 is seldom applied and, unsurprisingly, there is a dearth of case law interpreting it. Relying on the second clause of Application Note 1, Herula argues a consolidation order must be entered by the district court prior to counts in separate indictments being treated as "multiple counts" under §5G1.2. However, this argument overlooks the entire clause which also treats counts "contained in different indictments or informations for which sentences are to be imposed at the same time" as "multiple counts" for purposes of §5G1.2. The presence of the disjunctive "or" precludes a reading of Application Note 1 that would require a consolidated proceeding to qualify counts in separate indictments or informations as "multiple counts."

This conclusion, however, does not end the analysis. Our next question is whether the provisions of §5G1.2 should even be considered when calculating Herula's offense level under Chapter 3, Part D's grouping rules. We have not previously addressed this question, which requires our entry into the labyrinth that is the sentence guidelines' grouping rules. *See United States v. Hernandez Coplin*, 24 F.3d 312, 320 (1st Cir. 1994) ("The grouping rules are one of those

chapters in the Sentencing Guidelines where practical judgments, unexplained policy choices, and extreme complexity are so fused that even the most expert of lawyers and judges can be led astray."). Mercifully, our stay need only be a short one.

By its terms, §5G1.2 is not directly applicable to the initial calculation of the guideline range. However, as two of our sister circuits - the First and Sixth Circuits - have recognized, §5G1.2 does not make sense unless its definitions are read back into Chapter 3, Part D's grouping analysis. *Hernandez Coplin*, 24 F.3d at 318 n.6; *United States v. Griggs*, 47 F.3d 827, 832 (6th Cir. 1995). This "quirk in the Sentencing Guidelines" arises because application of §5G1.2 is predicated on first finding the offense level under §3D1.4. USSG §1B1.1; *Griggs*, 47 F.3d at 831. But to determine the offense level under §3D1.4, the district court must know which counts are to be included in its grouping calculation. To do that, it must first look to §5G1.2 to determine whether multiple counts are at issue in the case. Consequently, "[t]he only logical reading of U.S.S.G. §§ 3D1.1-5 and 5G1.2 requires that § 3D1.4 apply to multiple counts in separate indictments." *Griggs*, 47 F.3d at 832. Thus we join our sister circuits in holding §5G1.2's analysis of multiple counts must be read back into Chapter 3, Part D's grouping calculation.[4]

_____

[4] Assuming the Rhode Island and Colorado counts were to be treated as "multiple counts" under §5G1.2, Herula challenges for the first time in his reply brief whether the bankruptcy fraud claim was properly grouped with the wire

Herula argues enforcing a provision of the guidelines that was unanticipated by the parties makes his sentence unreasonable under *Booker*. We start by noting that because Herula was sentenced within a properly calculated guideline range, his sentence is afforded a presumption of reasonableness. *Kristl*, 437 F.3d at 1055. In our view, the expectations of the parties that a different sentencing calculation would prevail are not sufficient to overcome this presumption. To hold otherwise would serve to reward misinterpretations of the guidelines. The parties' sentencing expectations are certainly not listed among the factors included in § 3553(a).

Moreover, Herula's Colorado plea agreement specifically notified him that "the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position or recommendation of the parties." (05-1091 R. Vol. I, Doc. 172 at 14.)[5] His

fraud claims under §3D1.2(d). Relying on Application Note 5 to §3D1.2, he argues the claims should have been grouped separately resulting in a lower offense level. We note the terms of §3D1.2(d) require grouping "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss." Such is clearly the case with various types of fraud claims, including wire and bankruptcy fraud. The offense level for both are determined largely by the amount of loss. *See* USSG §2B1.1 (covering various kinds of fraud claims). Further, §3D1.2(d) specifically requires offenses covered by §2B1.1 to be grouped under §3D1.2(d). In any event, this argument was not preserved in the opening brief and we need not consider it here. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Moreover, Herula waived most of his reply brief at oral argument.

[5] The Rhode Island plea agreement similarly provided that "the Court may impose any sentence, up to the statutory maximum, regardless of any guideline

-10-

assertion that the parties stipulated a particular guideline range would be applied by the district court is not borne out by the record. The government merely agreed that it anticipated a particular guideline range would be used and committed itself to recommend a particular sentence, which it did.

Rule 11(c)(1)(B) makes clear that the district court is not bound by a recommendation by the government as to a particular sentence or sentencing range. If Herula wanted to ensure a certain sentencing outcome in exchange for his guilty plea, he should have negotiated a firm agreement to a specific sentence or range. *See* FED. R. CRIM. P. 11(c)(1)(C).

Herula's final argument — that he is entitled to mandatory application of the guidelines should "Congress choose to comply with the requirements" of *Blakely*[6] — is also misplaced for the simple reason that Congress has not attempted to make the guidelines mandatory in the wake of *Booker*. (Appellant's Br. at 19.) Consequently, Herula's sentence is reasonable.[7]

---

range computed, and that the Court is not bound by any position of the parties." (05-1109 R. Vol. I, Doc. 3 at 17.)

[6] *Blakely v. Washington*, 542 U.S. 296 (2004).

[7] Ironically, if we were to adopt Herula's arguments and allow him to be resentenced separately on the Colorado indictment and Rhode Island information, it seems probable his sentence would be higher. Although his recommended range might be lower, the district court would be free to impose consecutive rather than concurrent sentences on remand. *See* 18 U.S.C. § 3584(a); USSG §5G1.3(a). The government's recommendation for concurrent sentences would not be binding on the district court. Thus, although Herula's sentencing range was higher than anticipated, he still potentially benefitted from having both cases

B.    Ex Post Facto

Article I of the U.S. Constitution prohibits Congress and the states from passing an "ex post facto Law." *See* U.S. CONST. art. I, § 9, cl. 3; art. I, § 10, cl. 1.  Although by its terms the Ex Post Facto Clause limits legislatures instead of the judiciary, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Rogers v. Tenn.*, 532 U.S. 451, 456 (2001). "Although ex post facto principles are thus relevant to the retroactive application of judicial decisions through the due process clause of either the Fifth or the Fourteenth Amendment, the Ex Post Facto Clause is not incorporated wholesale or 'jot-for-jot.'" *Evans v. Ray*, 390 F.3d 1247, 1251 (10th Cir. 2004).  "'[D]ue process limitations on the retroactive application of judicial interpretations of criminal statutes' only apply to those decisions 'that are unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id*. (quoting *Rogers*, 532 U.S. at 461).

We, as well as all other circuits, have routinely rejected ex post facto arguments premised on *Booker*.  *See United States v. Rines*, 419 F.3d 1104, 1106-07 (10th Cir. 2005) ("We decline Defendant's invitation to hold that the Supreme Court ordered us to violate the Constitution . . . .  The only difference between the *Booker* regime under which his sentence is determined and the regime he would have anticipated at the time of his offense is that the guidelines are not grouped as multiple counts.

-12-

mandatory."), *cert. denied*, 126 S.Ct. 1089.[8]  Although Herula's argument is framed differently from previous ex post facto arguments, it is equally defective. First and foremost, we note *Booker* has not been applied retroactively, but only to cases on direct review at the time of the opinion.  *See Booker*, 125 S.Ct. at 769; *United States v. Bellamy*, 411 F.3d 1182 (10th Cir. 2005).  Additionally, Herula was sentenced within a correctly calculated guideline range.  *Rines*, 419 F.3d at 1107  ("[Defendant] was sentenced within the guidelines range, so he cannot complain of any unanticipated harshness.").  There is no suggestion Herula would have been sentenced differently had the guidelines been applied mandatorily. Consequently, he had adequate notice as to the sentence he received.  As Herula's argument concedes, in light of our preceding discussion, any increase in Herula's sentence was due to his misinterpretation of the Guidelines, not as a result of *Booker*'s material modification of the guidelines.

Based on the forgoing analysis, we AFFIRM Herula's sentence and DENY his Motion for a Limited Remand.

---

[8] *See also United States v. Staten*, 450 F.3d 384, 389 (9th Cir. 2006); *United States v. Hale*, 448 F.3d 971, 988 (7th Cir. 2006)*; United States v. Thomas*, 446 F.3d 1348, 1354-55 (11th Cir. 2006); *United States v. Counce,* 445 F.3d 1016, 1019 (8th Cir. 2006); *United States v. Pennavaria*, 445 F.3d 720, 723-24 (3d Cir. 2006); *United States v. Davenport*, 445 F.3d 366, 369-70 (4th Cir. 2006); *United States v. Charon*, 442 F.3d 881, 893 (5th Cir. 2006); *United States v. Fairclough*, 439 F.3d 76, 79 (2d Cir.), *cert. denied*, 126 S.Ct. 2915 (2006)*; United States v. Richardson,* 437 F.3d 550, 555 (6th Cir. 2006); *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Perez-Ruiz*, 421 F.3d 11, 15 (1st Cir. 2005), *cert. denied*, 126 S.Ct. 1092 (2006).